**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 (Subchapter V) |
| ONH AFC CS INVESTORS LLC, *et al.*,[1] | Case No. 23-10931 (CTG) |
| Debtors. | (Joint Administration Requested) |

**DECLARATION OF ERIC LEE IN SUPPORT OF**
**CHAPTER 11 PETITIONS AND FIRST DAY MOTIONS**

I, Eric Lee, declare as follows:

1.      I am the Chief Restructuring Officer of ONH AFC CS Investors LLC ("ONH AFC") and ONH 1601 CS Investors LLC ("ONH 1601", together with ONH AFC, the "Debtors"). I am also a Managing Director with B. Riley Advisory Services as a financial fraud expert with over 20 years of experience. I am a Certified Fraud Examiner and Certified Insolvency and Restructuring Advisor and have a Bachelor of Science degree in Accounting from Arizona State University. I have over 15 years of experience in litigation, forensic, and bankruptcy consulting, including the quantification of complex financial damages, lost profits, class action litigation, fraud investigations, reconstruction of financial records, corporate internal investigations, funds tracing, and other financial analyses. Prior to my career in consulting services, I worked as a Special Agent with the federal government detailed at the FBI for more than seven years. During my tenure as a Special Agent, I investigated criminal and civil violations relating to securities fraud, money laundering, theft and embezzlement, public corruption, and tax evasion.

2.      I am an authorized person/officer for purposes of executing all documents in connection with Debtors' bankruptcy petitions and related documents.

---

[1] The last four digits of the Debtors' federal tax identification numbers are 1199 (ONH AFC CS Investors LLC) and 6326 (ONH 1601 CS Investors LLC). The Debtors' mailing address is 3445 Peachtree Road, Suite 1225 Atlanta, GA 30326.

3.      As the Debtors' Chief Restructuring Officer, I am generally familiar with those portions of the Debtors' businesses, financial condition, and books and records that the Independent Manager (defined below) received from the prior manager of the Debtors. Except as otherwise indicated, the facts set forth in this declaration (the "Declaration") are based upon my personal knowledge, my review of relevant documents, information provided to me by employees or consultants working under my supervision, or my opinion based on experience, knowledge, and information concerning the Debtors' businesses and financial condition. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

4.      On July 14, 2023, the Debtors filed voluntary petitions for relief under subchapter V of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court"). By separate motion, the Debtors are seeking joint administration of these chapter 11 cases (the "Bankruptcy Cases").

5.      I submit this Declaration in support of the Debtors' voluntary petitions for relief and of the motions filed requesting "first day" type relief to minimize potential disruptions that filing these Bankruptcy Cases may have on the businesses (collectively, the "First Day Motions"). I am authorized to submit this Declaration on behalf of Debtors.

## Background

### A.  ONH AFC and ONH 1601 Formation

6.      The Debtors are Delaware limited liability companies formed to invest in commercial real estate in Atlanta, Georgia and Miami Beach, Florida. ONH AFC was formed on April 25, 2022. ONH 1601 was formed on July 15, 2022. The Debtors' limited liability company agreements (the "AFC Operating Agreement" and "1601 Operation Agreement," collectively the "Operating Agreements") provided for the governance of the Debtors' affairs, the conduct of the

Debtors' businesses, and the relations among the members of the Debtors. It also provided for the allocation of profits, losses, and distributions among the Debtors' members.

7.    Mr. Elchonon (also known as "Elie") Schwartz formed ONH AFC and ONH 1601 as part of a group of companies to invest in real estate organized under Nightingale Properties LLC ("Nightingale"). ONH AFC was created as a real estate company whose sole purpose was to contribute equity to fund the purchase of the Atlanta Financial Center, a large commercial real estate complex in Atlanta, Georgia, located at 3333 Peachtree Road NE, 3343 Peachtree Road NE, and 3353 Peachtree Road NE (the "Atlanta Financial Center"). The Atlanta Financial Center is in the Buckhead area of Atlanta and is comprised of three interconnected office towers and an on-site parking garage. Among other tenants, there are two longstanding anchor tenants—a major bank and a 180+ lawyer U.S. law firm. ONH 1601 was created to purchase equity interests in Lincoln Place, a mixed-use building in Miami Beach, Florida, 1601 Washington Ave, 1605 Washington Ave, and 1619 Washington Ave ("Lincoln Place"). Lincoln Place was owned in part, and managed, by the Nightingale group of companies prior to the Offering. It was previously fully occupied for two decades, but its major tenant vacated in early 2022, which presented an opportunity for a renovation and new potential tenants. The sole purpose of ONH 1601 was to recapitalize Lincoln Place.

8.    Mr. Schwartz, through the Debtors and other affiliates, planned to purchase and renovate the Atlanta Financial Center and provide a large renovation investment in Lincoln Place with: (1) equity raised from investors in ONH AFC and ONH 1601 through CrowdStreet, Inc. ("CrowdStreet") (an online registered broker-dealer), (2) equity raised from other investors, (3) equity contributed from Nightingale or related entities, and (4) senior secured debt. At the time of the Offerings (defined below) the Debtors' manager was a Nightingale affiliate, One Night

4867-3906-1360.1

Holdings, LLC ("One Night"). Under the terms of the investment plans for the Debtors, One Night (or its affiliates) would contribute capital of approximately 10% and the remaining 90% would be obtained from additional outside investors in the Debtors. One Night's equity contribution would be made on a subordinated basis to the investors' equity. Accordingly, One Night would be considered a "Subordinated Return Member" and the outside investors would be considered "Priority Return Members."[2] I have seen no evidence that One Night's investment was made.

9.  Nightingale managed One Night. Nightingale is a privately-held commercial real estate investment firm controlled by Mr. Schwartz who is its chief executive officer and founder. According to the private placement memoranda ("PPMs") sent to potential investors for the Atlanta Financial Center and Lincoln Place projects, Nightingale stated it was founded in 2005 and had owned or managed over 22 million square feet in more than 22 states.

10.  The Debtors' goals were to raise $16 million for ONH AFC and $15 million for ONH 1601 from accredited investors by means of a private placement under Regulation D of the Securities Act of 1933. Accredited investors in ONH AFC and ONH 1601 executed subscription agreements for the purpose of providing equity to fund the purchase, leasing, reposition, and renovation of the Atlanta Financial Center and the recapitalization and renovation of Lincoln Place, respectively. The minimum investment per investor was $25,000.

**B.  Subscription/Investment Process**

11.  To accomplish the Offerings (defined below), Nightingale executed agreements with CrowdStreet to obtain the additional investments through offerings for ONH AFC and ONH 1601 placed on a website called the CrowdStreet Marketplace (the "AFC Offering" and "1601

---

[2] There is a discrepancy in how the Subordinated Return Member is defined in the Operating Agreements. In the whereas clauses of the Operating Agreements, a company called ONH Promote LLC is defined as the Subordinated Return Member for both Debtors. However, the signature blocks on the Operating Agreements list One Night Holdings LLC as the Subordinated Return Member for both Debtors.

4

Offering", collectively the "Offerings"). On May 26, 2022, Nightingale launched the AFC Offering on the CrowdStreet Marketplace, where accredited investors could review AFC Offering materials, learn more about the Atlanta Financial Center, and complete their investment documents. On November 1, 2022, Nightingale launched the 1601 Offering on the CrowdStreet Marketplace, where accredited investors could review materials for Lincoln Place similar to the AFC Offering and complete their investment documents. The subscription agreements provided for the investment of capital into ONH AFC and ONH 1601 bank accounts controlled by Mr. Schwartz. ONH AFC first had a bank account with First Republic Bank, and now ONH AFC has bank accounts at First Republic Bank and JP Morgan. The ONH 1601 bank account is at JP Morgan.

12.    The Offerings provided for funding dates of June 27, 2022 (AFC) and December 12, 2022 (1601) for investments completed via the CrowdStreet Marketplace. Investments were accepted as late as February 2023 (AFC) and March 2023 (1601). Investors invested between $25,000 and $1.75 million in membership interests in the Debtors. ONH AFC raised approximately $54 million from 654 investors for the Atlanta Financial Center project—far beyond the original $16 million goal. According to preliminary data supplied by the CrowdStreet Marketplace, it is believed that approximately several million has been returned to investors at this time. ONH 1601 raised approximately $8.8 million from 167 investors for the Lincoln Place project—below the $15 million goal. It is believed that approximately a small amount has been returned to investors related to that project. The Debtors are continuing to obtain and reconcile information regarding the investments and the sources and uses of the funds.

13.    Under the agreement with CrowdStreet, the funds raised from the investors was to be held in a segregated account until the closing of the Atlanta Financial Center and Lincoln Place

projects. The PPMs provided that "The proceeds from this Offering will be used to purchase, lease, reposition, and extensively renovate" the properties. The Subscription Agreements only allowed "[the Debtors to] use any proceeds from this Offering, net of any organizational and offering expenses, to fund through its direct or indirect subsidiaries [the properties] … Managed by One Night Holdings LLC, a Delaware limited liability company." The Operating Agreements further provided that the Manager had a fiduciary duty to safeguard the funds and prohibit commingling or use of the money that did not benefit the Debtors.

**C. Post-Investment Communications with Investors**

14.    On or around September 6, 2022, Nightingale published a note to investors on the CrowdStreet Marketplace providing an update on the Atlanta Financial Center project. Nightingale described a modified debt financing plan and stated that it anticipated the closing on the purchase of the Center would occur in the last quarter of 2022. Nightingale also answered several investors' inquiries regarding its track record on certain other real estate deals and offered to accept additional investments from investments. On or around October 20, 2022, Nightingale provided an update to investors, providing details on a new debt term sheet and improved terms from the seller, and projecting property closing to occur in November 2022, and again offering to allow investors to increase their investment amount. Several months later, in January 2023, Nightingale updated investors that it had signed a term sheet with yet another new lender. Several months later, on or around April 4, 2023, CrowdStreet sent a letter to investors sharing another update from Nightingale indicating that the acquisition of the Atlanta Financial Center was further delayed and providing details on continued negotiations with the seller and real estate lenders. On May 5, 2023, Nightingale published an update on the 1601 Offering, indicating that they were in the final stages

4867-3906-1360.1

of closing on the remaining equity and had finalized debt terms and expected closing on the equity transaction for the Lincoln Place project within 60-90 days.

15.     On May 31, 2023, investors on both projects received another update from CrowdStreet detailing further developments on the Atlanta Financial Center and Lincoln Place, and requesting investor action to appoint a new, independent manager of ONH AFC and ONH 1601. The letters explained that some investors were requesting refunds on their investments, but that One Night had not processed those refunds timely or consistently. Although some refunds were apparently paid (related to ONH AFC), many requests remained outstanding. The letter also provided that CrowdStreet had made previous requests of the Debtor but was unable to verify whether any funds were available to pay investors. Accordingly, in the letters, CrowdStreet proposed that an independent manager be appointed for ONH AFC and ONH 1601, and it requested that the investors vote on the appointment of Anna Phillips to serve as independent manager and fiduciary on behalf of the investors and to manage the timely and orderly unwinding of the ONH AFC and ONH 1601.

### F.     Appointment of Independent Manager

16.     Effective June 7, 2023, One Night resigned as manager of ONH AFC and ONH 1601 and the investors overwhelmingly voted to appoint Ms. Anna Phillips. Accordingly, Ms. Phillips assumed the role of sole and independent manager (the "Independent Manager"). A copy of Ms. Phillips' biography is attached hereto as **Exhibit A**. Ms. Phillips sent a letter to investors on June 8, 2023, introducing herself as Independent Manager and stating that her focus was to develop and execute a plan to maximize and return value to the investors. To that end, since her appointment, Ms. Phillips has launched an independent investigation into the location and use of the funds raised from investors through the CrowdStreet Marketplace.

17.     Ms. Phillips has learned that the ONH AFC bank account at JP Morgan had a balance of approximately $125,000 as of June 1, 2023. Additionally, the ONH 1601 bank account at JP Morgan had a balance of approximately $1,600 as of March 30, 2023. In short, almost all the funds raised had been withdrawn from the Debtors' bank accounts prior to her appointment. Upon learning that almost all of the funds raised has been withdrawn Ms. Phillips immediately began making inquiries as to the status of the funds and how to return them to the Debtors.

18.     On July 5, 2023, Ms. Phillips sent another letter to the investors inviting them to a live webinar update on July 14, 2023. Ms. Phillips will be informing investors of these Bankruptcy Cases and explaining how these Bankruptcy Cases will significantly enhance Ms. Phillips' investigative tools and capability to successfully pursue claims on behalf of investors using the Bankruptcy Code's statutory and equitable authority and protections.

19.     At the direction of the Independent Manager, professionals engaged by the Debtors have done a preliminary review of the Debtors' prepetition transfers:

- There are millions of dollars in transfers to personal accounts owned by Mr. Schwartz that require further investigation;

- There are millions of dollars in transfers to accounts owned or controlled by the Nightingale group of companies that require further investigation;

- There are several large transfers that appear to have been made to third parties that require further investigation;

- There are transactions that appears to have been made to unknown entities that require further investigation.

4867-3906-1360.1

**The Debtors' Goals for These Bankruptcy Cases**

20.     The Debtors' and Ms. Phillips' goals for these Bankruptcy Cases are to continue their investigation into the Debtors prepetition activities and of the disposition of the funds that were intended for the investments in the Atlanta Financial Center and Lincoln Place. The Debtors will be greatly assisted in this investigation by the ability to use the powers of the Bankruptcy Code to investigate these prepetition activities. The Debtors will need to ascertain the ultimate beneficiaries of the funds raised, the ability to get the funds returned, investment amounts, refunded amounts, and any other potential creditor claims.

21.     The Debtors will provide Mr. Schwartz, Nightingale, and their affiliates with a letter seeking extensive and targeted discovery. Counsel for Mr. Schwartz has indicated its general agreement to cooperate in this discovery. The Debtors have also provided a letter seeking extensive discovery from CrowdStreet requesting any information relating to the Debtors. Counsel for CrowdStreet has agreed to cooperate and has already provided the Debtors with extensive information. The Debtors anticipate the possibility of seeking this Court's assistance should it not be able to accomplish its discovery objectives with various parties.

22.     While continuing to conduct the investigation, Ms. Phillips intends to simultaneously negotiate with various parties, including Mr. Schwartz and Nightingale, regarding potential claims against them and a range of potential outcomes for investors seeking to maximize their recovery.

23.     To accomplish the goals of maximizing recoveries and minimizing costs, to the extent the Debtors are unable to achieve rapid negotiated resolution for investors, the Debtors will seek confirmation of a plan of liquidation, which will provide for the formation of a liquidating trust to pursue claims on behalf of the investors and to work collaboratively with the investors and

4867-3906-1360.1

any related professionals to obtain a return of the investors' capital. The Chapter 11 plan of liquidation will allow all claims of the Debtors to be contributed into a liquidating trust and provide a mechanism for individual investors to assign their claims to the liquidating trustee.

24.    The Debtors have been working with CrowdStreet to supply information to investors. It is intended that CrowdStreet will continue to act as a communications conduit for investors and provide funding for these Bankruptcy Cases. Prior to filing the petitions commencing these Bankruptcy Cases, the Debtors borrowed $400,000 from CrowdStreet and are seeking approval for further borrowing on a super-priority basis through the DIP Motion (defined below) with a security interest only in the new bank accounts to be established by the Debtors post-bankruptcy. Mr. Schwartz and Nightingale have also provided prepetition funding to the Debtors. The Debtors have not provided any releases or restrictions on the Debtors' investigation in exchange for this financing.

### Evidentiary Support for the First Day Motions

25.    To minimize any disruption resulting from the filing of these Bankruptcy Cases as well as other possible adverse effects on the Debtors' businesses, contemporaneously with this Declaration, the Debtors are filing the First Day Motions requesting relief on an emergency basis.

26.    I have reviewed each of the First Day Motions, and I believe that the relief sought in the First Day Motions is tailored to meet the goals of these Bankruptcy Cases in an efficient and value maximizing manner. I believe it is critical that the First Day Motions be heard on an expedited basis. If the First Day Motions are not considered on an expedited basis, it could threaten the Debtors' ability to transition smoothly into these Bankruptcy Cases. Accordingly, I believe expedited consideration and approval of the First Day Motions is in the best interest of all of the Debtors' respective stakeholders.

4867-3906-1360.1

27.     The basis for each First Day Motion is described in more detail below:

- **Motion to Approve Debtor-in-Possession Financing (the "<u>DIP Motion</u>"):** As detailed in the DIP Motion, the Debtors require immediate access to funding to continue its investigation for the benefit of investors. CrowdStreet is proposing a loan up to $585,000 on a super-priority administrative claim basis with a security interest only in the new bank accounts to be established by the Debtors post-bankruptcy (the "<u>DIP Facility</u>"). CrowdStreet is not seeking a release or interest in the Debtors' claims or other assets. The terms of the DIP Facility are described in more detail in the DIP Motion. For the reasons stated in the DIP Motion, I believe that the relief requested in the DIP Motion is in the best interests of the Debtors, their estates, and all stakeholders.

- **Motion to Approve Retention of Claims and Noticing Agent:** The Debtors have filed a motion requesting the Court approve the retention of Epiq as claims and noticing agent. I believe the retention of a claims and noticing agent is necessary primarily to handle the significant burden of providing notice to interested parties, including the investors. I believe that the relief requested in this motion is in the best interests of the Debtors, their estates, and all stakeholders.

- **Joint Administration:** The Debtors have filed a motion requesting the Court jointly administer these Bankruptcy Cases. I believe that joint administration is necessary to minimize administrative costs in administering two separate bankruptcy cases. I believe that the relief requested in this motion is in the best interests of the Debtors, their estates, and all stakeholders.

- **Motion for Approval of Scope and Form of Notice to Investors:** The Debtors have filed a motion requesting approval of email service only to the investors and an opt-in procedure for investors who wish to receive hard copy, additional service. I understand that limiting service and the opt-in procedure will allow interested parties to receive notice of matters in these Bankruptcy Cases while avoiding unnecessary administrative expenses. I believe that the relief requested in this motion is in the best interests of the Debtors, their estates, and all stakeholders.

I declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information, and belief.

Dated: July 14, 2023                          <u>        /s/ Eric Lee                        </u>

Eric Lee, Chief Restructuring Officer
ONH AFC CS Investors LLC
ONH 1601 CS Investors LLC