## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 (Subchapter V) |
| ONH AFC CS INVESTORS LLC, *et al.*,[1] | Case No. 23-10931 (CTG) |
| | (Jointly Administered) |
| Debtors. | **Ref. Docket No. 6** |

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (III) GRANTING ADEQUATE PROTECTION, (IV) MODIFYING THE AUTOMATIC STAY, AND (V) SCHEDULING A FINAL HEARING

Upon the motion, dated July 14, 2023 (the "DIP Motion")[2] of ONH AFC CS Investors LLC and ONH 1601 CS Investors LLC (each, a "Debtor" and collectively, the "Debtors") in the above-referenced chapter 11 cases (collectively, the "Bankruptcy Cases"), pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), and 507 of title 11 of the United States Code, (the "Bankruptcy Code"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 4001-2 and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an interim order (the "Interim Order") authorizing the Debtors to, among other things:

(i)     Obtain postpetition financing (the "DIP Financing") pursuant to the terms and conditions of the DIP Financing Documents (as defined below), the Interim Order, and the

---

[1] The last four digits of the Debtors' federal tax identification numbers are 1199 (ONH AFC CS Investors LLC) and 6326 (ONH 1601 CS Investors LLC). The Debtors' mailing address is B. Riley Advisory Services, 3445 Peachtree Road, Suite 1225, Atlanta, GA 30326.

[2] Capitalized terms used, but not defined, in this Order shall have the same meanings given to them in the DIP Motion.

Final Order (as defined below);

    (ii) Enter into (a) a $585,000.00 Debtor-in-Possession Loan and Security Agreement (the "<u>DIP Credit Agreement</u>"), substantially in the form attached hereto as **<u>Exhibit A</u>**, by and among each of the Debtors (in such capacities, the "<u>Borrowers</u>") and CrowdStreet, Inc. as Lender (the "<u>Lender</u>") and (b) all other loan documents (together with the DIP Credit Agreement, the "<u>DIP Financing Documents</u>");

    (iii) Borrow, on an interim basis, pursuant to the DIP Financing Documents and this Interim Order, postpetition financing in an aggregate principal amount of up to $50,000.00 (the "<u>Interim DIP Loan</u>") and obtain other financial accommodations from the Lender pursuant to the DIP Credit Agreement, the other DIP Financing Documents, and the Interim Order;

    (iv) Borrow, on a final basis, pursuant to the DIP Financing Documents and the Final Order (as defined below), postpetition financing in an aggregate principal amount of up to $585,000.00 (the "<u>DIP Loan</u>", together with the Interim DIP Loan, the "<u>DIP Facility</u>") and obtain other financial accommodations from the Lender pursuant to the DIP Credit Agreement, the other DIP Financing Documents, and the Final Order (as defined below);

    (v) Authorize the Borrowers to execute and deliver the DIP Credit Agreement and the other DIP Financing Documents;

    (vi) Grant to the Lender certain liens and security interests and allowed superpriority administrative expense claims in each of the Bankruptcy Cases and any Successor Cases (as defined below) for the DIP Financing and all obligations of the Debtors owing under the DIP Financing Documents (collectively, and including all "Obligations" of the Debtors as defined and described in the DIP Credit Agreement, the "<u>DIP Obligations</u>") subject to the priorities set forth in paragraph 2(i) below;

(vii)    Use the proceeds of the DIP Financing in accordance with the DIP Credit Agreement, the DIP Financing Documents and this Interim Order, in all cases in accordance with the DIP Budget (as defined in the DIP Credit Agreement), a copy of which is attached hereto as **Exhibit B**, and as otherwise provided in the DIP Financing Documents;

(viii)    Use any prepetition collateral and provide adequate protection to any parties that may have an interest in such prepetition collateral for any diminution in value of their interests therein; and

(ix)    Vacate and modify the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms of the DIP Financing Documents and this Interim Order;

(x)    Schedule a final hearing (the "Final Hearing") to consider entry of an order (the "Final Order") granting the relief requested in the DIP Motion on a final basis and approving the form of notice with respect to the Final Hearing; and

(xi)    Waive, to the extent applicable, any stay of the immediate effectiveness of this Interim Order imposed by the Bankruptcy Code or the Bankruptcy Rules, such that this Interim Order shall be immediately effective upon its entry on the Court's docket.

The Court having considered the DIP Motion, the *Declaration of Eric Lee in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), the DIP Credit Agreement, and the evidence submitted or adduced and the arguments of counsel made at the hearing on this Interim Order (the "Interim Hearing"); and notice of the DIP Motion and the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and 9014; and the Interim Hearing having been held and concluded; and it appearing that granting the relief requested in the DIP Motion on an interim basis is necessary to avoid immediate

and irreparable harm to the Debtors pending the Final Hearing, and is otherwise fair and reasonable and in the best interests of the Debtors, their estates, and their creditors, and is essential for the preservation of the value of the Debtors' assets; and all objections, if any, to the entry of this Interim Order having been withdrawn, resolved or overruled by the Court; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

**IT IS FOUND AND DETERMINED that[3]:**

A.      **Petition Date**.  On July 14, 2023 (the "**Petition Date**"), the Debtors filed voluntary petitions under subchapter V of chapter 11 of the Bankruptcy Code with this Court.

B.      **Jurisdiction and Venue**.  This Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. §§ 157(b) and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, and over the persons and property affected hereby.  Venue for the Bankruptcy Cases and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  This Court may enter a final order consistent with Article III of the United States Constitution.

C.      **Notice**.  Notice of the Interim Hearing and notice of DIP Motion has been provided by the Debtors to (i) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"); (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) the Debtors' twenty (20) largest unsecured creditors (excluding insiders); (vi) the Subchapter V Trustee; (vii) any parties that may hold liens against the Debtors' assets; and (viii) counsel to the Lender, by

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

telecopy, email, overnight courier and/or hand delivery.  Under the circumstances, such notice of the Interim Hearing and the DIP Motion constitutes adequate and sufficient notice and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001(b), (c), and (d), and the Local Rules.

      D.    **Findings Regarding the DIP Financing**.

      (i)    **Need for DIP Financing**.  An immediate need exists for the Debtors to obtain funds from the Interim DIP Loan to, among other things, administer and preserve the value of the Debtors' estates pending the Final Hearing.  The ability of the Debtors to finance these Bankruptcy Cases through the incurrence of the Interim DIP Loan is vital to maximize the value of the Debtors' assets for the benefit of their creditors and to avoid immediate and irreparable harm to the Debtors, their estates, and their creditors.

      (ii)    **No Credit Available on More Favorable Terms**.  The Debtors have been unable to obtain (a) unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense, or (b) credit for money borrowed secured by a lien on property of the estate on more favorable terms and conditions than those provided in the DIP Credit Agreement and this Interim Order.  The Debtors are unable to obtain credit for borrowed money without granting to the Lender the DIP Protections (as defined below).

      E.    **Use of Proceeds of the DIP Facility**.  Proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses under the DIP Financing Documents) shall be used, in each case in a manner consistent with the terms and conditions of the DIP Credit Agreement and this Interim Order and in accordance with the DIP Budget.

      F.    **Application of Proceeds of DIP Collateral**.  All proceeds of any sale or other disposition of the DIP Collateral (as defined below) shall be applied in accordance with the DIP

Budget and the terms and conditions of the DIP Financing Documents.

G. **Effect of Reversal, Good Faith**.  The Lender has indicated a willingness to provide financing to the Debtors in accordance with the DIP Credit Agreement and this Interim Order, and provided that the DIP Obligations and other protections granted by this Interim Order and the DIP Documents will not be affected by any subsequent reversal or modification of this Interim Order as provided in section 364(e) of the Bankruptcy Code.  The Lender has acted in good faith in agreeing to provide the DIP Financing approved by this Interim Order.

H. **Business Judgment and Good Faith Pursuant to Section 364(e)**.

(i)    The terms and conditions of the DIP Facility and the DIP Financing Documents, and the fees paid and to be paid thereunder are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration;

(ii)    the DIP Financing Documents were negotiated in good faith and at arms' length between the Debtors and the Lender; and

(iii)    the proceeds to be extended under the DIP Facility will be so extended in good faith, and for valid business purposes and uses, as a consequence of which the Lender is entitled to the protection and benefits of section 364(e) of the Bankruptcy Code.

I. **Relief Essential; Best Interest; Good Cause**.  Good cause has been shown for the relief requested in the DIP Motion (and as provided in this Interim Order) and such relief is necessary, essential, and appropriate for the preservation of the Debtors' assets, business, and property.  It is in the best interest of the Debtors' estates to be allowed to enter into the DIP Facility contemplated by the DIP Credit Agreement.

J. **Immediate Entry**.  Sufficient cause exists for immediate entry of this Interim

Order pursuant to Local Rule 4001(b)(ii) and Bankruptcy Rule 4001(c)(2).

**NOW, THEREFORE,** based upon the foregoing findings, and upon consideration of the DIP Motion and the record made before this Court with respect to the DIP Motion, including the record created during the Interim Hearing, and with the consent of the Debtors and the Lender to the form and entry of this Interim Order, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED AND DECREED:**

1. **Motion Granted**.  The DIP Motion is granted in accordance with the terms and conditions set forth in this Interim Order and the DIP Credit Agreement.  Any objections to the DIP Motion with respect to entry of this Interim Order to the extent not withdrawn, waived or otherwise resolved, and all reservations of rights included therein, are hereby denied and overruled on the merits.

2. **DIP Financing Documents**.

(a) **Approval of Entry into DIP Financing Documents**.  The Debtors are authorized and empowered to execute and deliver the DIP Financing Documents and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Financing Documents, and to execute and deliver all instruments and documents which may be required or necessary for the performance by the Debtors under the DIP Financing Documents.  The Debtors are hereby authorized to do and perform all acts, pay the principal, interest, fees, expenses, indemnities and other amounts described in the DIP Credit Agreement and all other DIP Financing Documents as such become due, including, without limitation, reasonable attorneys' fees and disbursements as provided for in the DIP Credit Agreement, which amounts shall not otherwise be subject to approval of this Court.  While not included in the DIP Budget, the Lender's reasonable and documented fees and expenses reimbursable under the DIP Financing

Documents, whether incurred before or after the Petition Date, including, without limitation, reasonable and documented fees and disbursements of counsel as set forth in the DIP Financing Documents, shall be payable on the Termination Date (as defined in the DIP Credit Agreement), provided, however, that Lender shall send a summary invoice of such fees and expenses to the Debtors and their counsel, the U.S. Trustee, and Subchapter V Trustee. Within fourteen (14) days after delivery of such invoices in accordance with this paragraph, the Debtors shall pay such fees and costs; provided, however, that to the extent an objection has been raised to certain fees and costs within such fourteen (14) days, the Debtors shall pay only such fees and costs to which no objection has been raised.  To the extent there is an objection with respect to any such costs and fees that is not resolved consensually, the Court may resolve the objection.  No professional to the Lender shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.

(b)    **Interim Authorization to Borrow/and or Guarantee**.  To enable the Debtors to continue to preserve the value of their estates during the period prior to entry of the Final Order (the "Interim Period") and subject to the terms and conditions of this Interim Order, upon the execution of the DIP Credit Agreement and the other DIP Financing Documents, the Debtors are hereby authorized to borrow and/or guarantee, as applicable, the Interim DIP Loan up to a total committed amount of $50,000.00 under the DIP Financing Documents.

(c)    **Conditions Precedent**.  The Lender shall have no obligation to make any loan or advance under the DIP Credit Agreement during the Interim Period unless the conditions precedent to making such loan under the DIP Credit Agreement have been satisfied in full or waived by the Lender in its sole discretion.

(d)    **DIP Liens**.  Effective immediately upon the entry of this Interim Order, on

account of the Interim DIP Loan, subject to any prior valid, unavoidable, perfected liens and security interests in existence as of the Petition Date (or as such lien may be perfected after the Petition Date to the extent permitted by Section 546 of the Bankruptcy Code), the Lender is hereby granted first-priority postpetition security interests and liens (which shall immediately be valid, binding, permanent, continuing, enforceable and non-avoidable) on, subject to the Carve-Out and subject to and effective upon entry of the Final Order granting such relief, any bank account and any proceeds of such bank account held by the Debtors, excluding the accounts held at JPMorgan Chase the last four digits of which accounts are 8187 and 6789 (collectively, the "DIP Collateral," and all such liens and security interests granted on or in the DIP Collateral pursuant to this Interim Order and the DIP Financing Documents, the "DIP Liens").

(e)    Pursuant to section 364(c)(2) of the Bankruptcy Code, the Lender is hereby granted a perfected, first priority lien on all DIP Collateral, subject to the Carve Out, not otherwise subject to any valid, unavoidable, perfected liens and security interests.

(f)    **DIP Lien Priority**.  Subject to the Carve Out, until the entry of the Final Order (pursuant to which the DIP Obligations will be secured by a priming lien pursuant to section 364(d) of the Bankruptcy Code), the DIP Liens securing the DIP Obligations shall be junior and subordinate to any valid, unavoidable, perfected liens and security interests on the DIP Collateral, pursuant to section 364(c)(3), and shall otherwise be senior in priority and superior to any security, mortgage, collateral interest, lien or claim on or to any of the DIP Collateral.  Other than as expressly set forth herein, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter granted in the Bankruptcy Cases. The Lender shall retain the DIP Liens, whether the DIP Collateral is retained by the Debtors or transferred to another entity, and, subject to and effective upon entry of the Final Order granting

such relief, in no event shall any of the Lender's claims on account of the DIP Obligations (including but not limited to any of its claims secured by the DIP Liens), without Lender's consent, be deemed satisfied, settled, discharged, released, treated, impaired, cancelled, or otherwise modified, in any way, absent payment to Lender, in exchange for the satisfaction, settlement, discharge, release treatment, impairment, cancellation or modification, in any way, of such claims, of cash, as of the date on which such claims are to be satisfied, settled, discharged, released, treated, impaired, cancelled, or otherwise modified, in any way, in an amount equal to or greater than the value of the Lender's interest (including but not limited to interest allowed under Section 506(b) of the Bankruptcy Code) in the estates interest in the DIP Collateral.  The DIP Liens shall be valid and enforceable against any trustee appointed in the Bankruptcy Cases, upon the conversion of any of the Bankruptcy Cases to a case under Chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (each, a "Successor Case" and together, the "Successor Cases"), or upon the dismissal of any of the Bankruptcy Cases or Successor Cases.

(g)    **Enforceable Obligations**.  The DIP Financing Documents shall constitute and evidence the valid and binding obligations of the Debtors, which obligations shall be enforceable against the Debtors, their estates and any successors thereto and their creditors or representatives thereof, in accordance with their terms.

(h)    **Protection of Lender's and Other Rights**.  From and after the Petition Date, the Debtors shall use the proceeds of the extensions of credit under the DIP Facility only for the purposes specifically set forth in the DIP Credit Agreement and this Interim Order and in strict compliance with the DIP Budget (subject to any variances thereto permitted by the DIP Credit Agreement).

(i)    **Superpriority Administrative Claim Status**.  All DIP Obligations shall

constitute an allowed superpriority administrative expense claim (the "<u>DIP Superpriority Claim</u>" and, together with the DIP Liens, the "<u>DIP Protections</u>"), subject to the Carve Out, with priority in each of the Bankruptcy Cases under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, including,  to the extent allowable under the Bankruptcy Code, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c) (subject to and effective upon entry of the Final Order granting such relief), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code and pursuant to any other provision of the Bankruptcy Code except as otherwise set forth herein, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment.

3.    **<u>Authorization to Use Proceeds of DIP Facility</u>**.    Pursuant to the terms and conditions of this Interim Order, the DIP Credit Agreement and the other DIP Financing Documents, and in accordance with the DIP Budget and the variances thereto set forth in the DIP Credit Agreement, the Debtors are authorized to use the advances under the DIP Credit Agreement during the period commencing immediately after the entry of the Interim Order and terminating upon the occurrence of an Event of Default (as defined below) and the termination of the DIP Credit Agreement in accordance with its terms and subject to the provisions hereof.  The Debtors and the Lender may agree in writing to modify the DIP Budget in their discretion at any time that the DIP Financing remains outstanding, with notice of such modification filed on the Court's public docket.

4.    **<u>Postpetition Lien Perfection</u>**.    This Interim Order shall be sufficient and

conclusive evidence of the validity, perfection, and priority of the DIP Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect the DIP Liens or to entitle the DIP Liens to the priorities granted herein.  Notwithstanding the foregoing, the Lender may, in its sole discretion, file such financing statements, recordings, deeds of trust, mortgages, notices of liens and other instruments and documents, and are hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, recordings, deeds of trust, mortgages, notices and other instruments and documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Bankruptcy Cases.  The Debtors shall execute and deliver to the Lender all such financing statements, recordings, deeds of trust, mortgages, notices and other instruments and documents as the Lender may reasonably request to evidence, confirm, validate or perfect, or to ensure the contemplated priority of, the DIP Liens granted pursuant hereto.  The Lender, in its discretion, may file a photocopy of this Interim Order as a financing statement with any recording officer designated to file or record financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event, the recording officer shall be authorized to file or record such copy of this Interim Order.

5.    **Adequate Protection Liens**.  Solely in the event and to the extent that the Debtors have obligations to any party that remain outstanding that are subject to valid, perfected and non-avoidable prepetition liens on the Debtors' property, such parties (each a "Prepetition Lienholder" and collectively the "Prepetition Lienholders") shall receive the following as adequate protection

against any diminution in the value of such Prepetition Lienholder's interest caused by the imposition of the automatic stay: pursuant to sections 361 and 363(e) the Prepetition Lienholders are hereby granted continuing, valid, binding, enforceable, and perfected postpetition security interests in and liens on the DIP Collateral (the "Adequate Protection Liens"). The Adequate Protection Liens shall otherwise be junior to the DIP Liens and subject to the Carve Out. Subject to and effective upon entry of the Final Order, the Adequate Protection Liens shall be senior to all security interests in, liens on, or claims against any of the DIP Collateral other than the DIP Liens.

6.    **Payment of Compensation**.  Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors or shall affect the right of the Lender to object to the allowance and payment of such fees and expenses or to permit the Debtors to pay any such amounts not set forth in the DIP Budget.

7.    **Collateral Rights**.  Unless the Lender has provided its prior written consent or all DIP Obligations have been paid in full in cash (or will be paid in full in cash upon entry of an order approving indebtedness described in subparagraph (a) below), and all commitments to lend have terminated:

(a)    The Debtors shall not seek entry, in these Bankruptcy Cases, or in any Successor Cases, of any order which authorizes the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral and/or entitled to priority administrative status which is senior or *pari passu* to those granted to the Lender pursuant to this Interim Order, unless such credit or indebtedness is sufficient to pay all of the DIP Obligations in full in cash; and

(b)    The Debtors shall not consent to relief from the automatic stay by any person other than the Lender with respect to all or any portion of the DIP Collateral with a value

greater than $100,000 without the express written consent of the Lender.

8.      **Commitment Termination Date**.  All DIP Obligations of the Debtors to the Lender shall be immediately due and payable, and the Debtors' authority to use the proceeds of the DIP Facility shall cease, both on the date that is the earliest to occur constituting the Termination Date (as defined in the DIP Credit Agreement).

9.      **Disposition of Collateral**.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, without the prior written consent of the Lender (and no such consent shall be implied, from any other action, inaction or acquiescence by the Lender or an order of this Court), except as provided in the DIP Credit Agreement and this Interim Order and approved by the Bankruptcy Court to the extent required under applicable bankruptcy law.

10.     **Events of Default**.  The occurrence of an "Event of Default" pursuant to Section 8.1 of the DIP Credit Agreement shall constitute an event of default under this Interim Order, unless expressly waived in writing in accordance with the consents required in the DIP Financing Documents (collectively, the "Events of Default").

**Rights and Remedies Upon Event of Default**.

(a)     Any otherwise applicable automatic stay is hereby modified so that after the occurrence of any Event of Default and at any time thereafter during the continuance of such Event of Default, upon five (5) business day's prior written notice of such occurrence (the "Remedies Notice Period"), in each case given to each of the Debtors and counsel thereto, the U.S. Trustee, and the Subchapter V Trustee, the Lender shall be entitled to exercise its rights and remedies with respect to the Debtors in accordance with the DIP Financing Documents as to the DIP Collateral. Nothing in this Interim Order shall limit the ability of any party to immediately exercise rights and

remedies with respect any non-Debtors.

(b)    Notwithstanding the preceding paragraph, immediately following the giving of notice by the Lender of the occurrence of an Event of Default:  (i) the Debtors shall continue to deliver and cause the delivery of the proceeds of DIP Collateral to the Lender as provided in the DIP Credit Agreement and this Interim Order; (ii) the Lender shall continue to apply such proceeds in accordance with the provisions of this Interim Order and of the DIP Credit Agreement; (iii) the Debtors shall have no right to use any of such proceeds other than towards the satisfaction of the DIP Obligations; and (iv) any obligation otherwise imposed on the Lender to provide any loan or advance to the Debtors pursuant to the DIP Financing Documents shall immediately be suspended.  Following the giving of notice by the Lender of the occurrence of an Event of Default, the Debtors shall be entitled to an emergency hearing before this Court.  If the Debtors do not contest the right of the Lender to exercise its remedies within such five (5) business day period, or if an emergency hearing is held that does not result in the Court preventing the Lender from exercising its rights and remedies, then the automatic stay, as to the Lender, shall automatically terminate at the end of the Remedies Notice Period.

(c)    Nothing included herein shall prejudice, impair, or otherwise affect the Lender's rights to seek any other or supplemental relief in respect of the Lenders' rights, as provided in the DIP Credit Agreement.

11.    **Proofs of Claim**.  The Lender will not be required to file proofs of claim in these Bankruptcy Cases or any Successor Case.

12.    **Carve Out**.

(a)    The DIP Lender's liens, claims and security interests in the DIP Collateral and their Super-Priority Claim shall, in each instance, be subject only to the right to payment of

the following (the "Carve Out"):

     i.   Statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) plus interest at the statutory rate pursuant to 31 U.S.C. § 3717;

     ii.   Fees payable to the Clerk of this Court; and

     iii.   Subject to the terms and conditions of this Interim Order, (a) the unpaid outstanding reasonable fees and expenses actually incurred on or after the Petition Date as provided in the DIP Budget and prior to the Carve Out Trigger Date (as defined below), and approved and allowed by an order of the Court pursuant to Bankruptcy Code §§ 326, 328, 330 or 331 by (x) attorneys, accountants, independent managers, and other professionals retained by the Debtor under Bankruptcy Code §§ 327 or 1103(a) and (y) the Subchapter V Trustee (collectively, the "Professionals"), regardless of when such Bankruptcy approval is given, in an amount not to exceed the amounts set forth for each such Professional for the periods prior to the Carve Out Trigger Date, to be calculated based on the percentage of the month that has elapsed prior to the Carve Out Trigger Date multiplied by the amount allocated for that month under the DIP Budget; (b) the reasonable fees and expenses actually incurred, and approved and allowed by a final order of the Court pursuant to Bankruptcy Code §§ 326, 328, 330 or 331 of the Bankruptcy Code, by the Professionals after the Carve Out Trigger Date in an aggregate sum not to exceed $75,000 (the "Professional Carve Out Cap"); and (c) the accrued but unpaid fees owed to any Manager of the Debtors for the month of the Carve Out Trigger Date, as set forth in the DIP Budget. The "Carve Out Trigger Date" means the date on which the written notice is provided by the DIP Lender to the Debtor, the United States Trustee and counsel to Subchapter V Trustee (if a Subchapter V Trustee has been appointed) identifying an Event of Default becomes effective.

    13.   Notwithstanding the foregoing, none of the Carve Out proceeds from the DIP

Facility or Cash Collateral may be used to pursue claims or causes of action of any kind against the DIP Lender.

      14.    **Other Rights and Obligations**.

      (a)    Good Faith Under Section 364(e) of the Bankruptcy Code. No Modification or Stay of this Interim Order.  The Lender has acted in good faith in connection with negotiating the DIP Financing Documents, and extending credit under the DIP Facility, and its reliance on this Interim Order is in good faith.  Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter reversed, modified amended or vacated by a subsequent order of this or any other Court, the Lender is entitled to all the benefits and protections provided in section 364(e) of the Bankruptcy Code.  Any such reversal, modification, amendment or vacatur shall not affect the validity and enforceability of any advances made pursuant to this Interim Order or the liens or priority authorized or created hereby.  Any claims, liens, or DIP Protections granted to the Lender hereunder arising prior to the effective date of such reversal, modification, amendment or vacatur shall be governed in all respects by the original provisions of this Interim Order, and the Lender shall be entitled to all of the rights, remedies, privileges, and benefits, including the DIP Protections granted herein, with respect to any such claim.  Since the loans made pursuant to the DIP Credit Agreement are made in reliance on this Interim Order, the obligations owed to the Lender prior to the effective date of any reversal or modification of this Interim Order cannot, as a result of any subsequent order in these Bankruptcy Cases or in any Successor Cases, be subordinated, lose their lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to the Lender under this Interim Order and/or the DIP Financing

Documents.

    (b)    <u>Binding Effect</u>.  The provisions of this Interim Order shall be binding upon and inure to the benefit of the Lender, the Debtors and each of their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in these Bankruptcy Cases, in any Successor Cases, or upon dismissal of any such chapter 11 or chapter 7 case.

    (c)    <u>No Waiver</u>.  The failure of the Lender to seek relief or otherwise exercise its rights and remedies under the DIP Financing Documents, the DIP Facility, this Interim Order or otherwise, as applicable, shall not constitute a waiver of the Lender's rights hereunder, thereunder, or otherwise.  Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the Lender under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the rights of the Lender to (i) request conversion of these Bankruptcy Cases to cases under Chapter 7, dismissal of these Bankruptcy Cases, or the appointment of a trustee in these Bankruptcy Cases, or (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a plan of reorganization or liquidation or (iii) exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) the Lender may have pursuant to this Interim Order, the DIP Financing Documents, or applicable law.  Nothing in this Interim Order shall interfere with the rights of any party with respect to any non-Debtors.

    (d)    <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

(e)     <u>No Marshaling</u>.   Subject to and effective upon entry of the Final Order granting such relief, the Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral.

(f)     <u>Waiver of Section 552(b)</u>.   Subject to and effective upon entry of the Final Order granting such relief, in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the Lender.

(g)     <u>Amendment</u>.   The Debtors and the Lender may amend, supplement or otherwise modify, or agree to a waiver or consent in respect of, any provision of the DIP Financing Documents (a "DIP Loan Amendment") without further approval or order of the Court, so long as (a) such DIP Loan Amendment is not material (for purposes hereof, a "material" DIP Loan Amendment shall mean any DIP Loan Amendment that operates to increase the interest rate other than as currently provided in the DIP Loan Documents, increase the aggregate principal lending commitment, increase or add an additional early termination fee, prepayment or repayment premium, add specific new events of default or enlarge the nature and extent of default remedies available to the Lenders following an event of default) and is undertaken in good faith by the Lenders and Debtors; (b) the Debtors provide prior written notice of the DIP Loan Amendment (the "DIP Loan Amendment Notice") to (i) the U.S. Trustee, (ii) Subchapter V Trustee, and (iii) the twenty (20) largest unsecured creditors; and (d) no objection to the DIP Loan Amendment is filed with the Court within seven (7) days from the date the DIP Loan Amendment Notice is filed with the Court in accordance with this Paragraph.  Any material DIP Loan Amendment to the DIP Loan Documents must be approved pursuant to an order of this Court on fourteen (14) days' notice to all parties in interest to be effective.

15.     **<u>Survival of Interim Order and Other Matters</u>**.   The provisions of this Interim

Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any Plan in these Bankruptcy Cases, (ii) converting any of these Bankruptcy Cases to a case under Chapter 7 of the Bankruptcy Code or any Successor Cases, (iii) to the extent authorized by applicable law, dismissing any of these Bankruptcy Cases, (iv) cessation of any of these Bankruptcy Cases being designated as a case under Subchapter V of Chapter 11 of the Bankruptcy Code (v) withdrawing of the reference of any of these Bankruptcy Cases from this Court, or (vi) providing for abstention from handling or retaining of jurisdiction of any of these Bankruptcy Cases in this Court.  The terms and provisions of this Interim Order, including the DIP Protections granted pursuant to this Interim Order and the DIP Financing Documents, shall continue in full force and effect notwithstanding the entry of such order, and such DIP Protections shall maintain their priority as provided by this Interim Order until all the obligations of the Debtors to the Lender pursuant to the DIP Financing Documents have been indefeasibly paid in full in cash and discharged (such payment being without prejudice to any terms or provisions contained in the DIP Financing Documents which survive such discharge by their terms).

(a)    _Inconsistency_.  In the event of any inconsistency between the terms and conditions of the DIP Financing Documents and of this Interim Order, the provisions of this Interim Order shall govern and control in all respects.

(b)    _Enforceability_.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable _nunc pro tunc_ to the Petition Date immediately upon entry of this Interim Order. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or

effectiveness of this Interim Order.  The rights of all parties in interest to object to the terms of the

Final Order, the DIP Credit Agreement and any other DIP Financing Document at the Final

Hearing are expressly reserved.

(c)      Objections Overruled.  All objections to the DIP Motion to the extent not

withdrawn or resolved, are hereby overruled on an interim basis.

(d)      No Waivers or Modification of Interim Order.  The Debtors irrevocably

waive any right to seek any modification or extension of this Interim Order without the prior

written consent of the Lender and no such consent shall be implied by any other action, inaction

or acquiescence of the Lender.

16.      **Governmental Consents**.  Except as otherwise provided herein, the execution,

delivery and performance by the Debtors of the DIP Financing Documents and the consummation

of the transactions contemplated by the DIP Financing Documents do not and will not require any

registration with, consent or approval of, or notice to, or other action to, with or by, any

Governmental Authority (as defined in the DIP Credit Agreement).

17.      **Final Hearing**.

(a)      The Final Hearing to consider entry of the Final Order and final approval of

the DIP Facility is scheduled for July 31, 2023 at 4:00 p.m. prevailing Eastern time at the United

States Bankruptcy Court for the District of Delaware.  If no objections to the relief sought in the

Final Hearing are filed and served in accordance with this Interim Order, no Final Hearing may be

held, and a separate Final Order may be presented by the Debtors and entered by this Court.

(b)      Within two (2) business days following entry of this Interim Order, the

Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this

Interim Order and of the Final Hearing (the "Final Hearing Notice"), together with copies of this

Interim Order, the proposed Final Order and the DIP Motion, on: (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; (c) the U.S. Trustee; (d) the Subchapter V Trustee; (e) the Internal Revenue Service; (f) counsel to the Lender; and (g) the Securities and Exchange Commission. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Bankruptcy Court no later than July 28, 2023 at 4:00 p.m. prevailing Eastern time which objections shall be served so that the same are received on or before such date by: (a) bankruptcy counsel for the Debtors, (x) BakerHostetler, 45 Rockefeller Plaza, New York, NY 10111, Attn: Jorian L. Rose (jrose@bakerlaw.com) and (y) Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, P.O. Box 2081, Wilmington, Delaware 19899, Attn: Matthew B. McGuire (mcguire@lrclaw.com); (b) counsel for the Lender, Wilson Sonsini Goodrich & Rosati, P.C., 222 Delaware Avenue, Suite 800, Attn: Benjamin Hoch (bhoch@wsgr.com), Erin R. Fay (efay@wsgr.com), Marsha Sukach (msukach@wsgr.com), and Catherine C. Lyons (clyons@wsgr.com), (c) the Office of the United States Trustee for the District of Delaware, Attn: John Schanne (John.Schanne@usdoj.gov); and (d) the Subchapter V Trustee, and shall be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware, in each case to allow actual receipt of the foregoing no later than July 28, 2023 at 4:00 p.m. prevailing Eastern Time. Notwithstanding the terms of this Interim Order, this Court is not precluded from entering a Final Order containing provisions that are inconsistent with, or contrary to any of the terms in this Interim Order, subject to the protections under section 364(e) of the Bankruptcy Code and the rights of the Lender to terminate the DIP Credit Agreement if such Final Order is not acceptable to them. In the event this Court modifies any of the provisions of this Interim Order or the DIP Financing Documents following such further hearing, such modifications

shall not affect the rights and priorities of Lender pursuant to this Interim Order with respect to the DIP Collateral, and any portion of the DIP Obligations which arises or is incurred, advanced or paid prior to such modifications (or otherwise arising prior to such modifications), and this Interim Order shall remain in full force and effect except as specifically amended or modified at such Final Hearing.

        (c)    <u>Retention of Jurisdiction</u>.   The Bankruptcy Court has and will retain jurisdiction to enforce this Interim Order.

**Dated: July 21st, 2023**
**Wilmington, Delaware**

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**