IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ONH AFC CS INVESTORS LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11 (Subchapter V)<br><br>Case No. 23-10931 (CTG)<br><br>(Jointly Administered)<br><br>Hearing Date: October 26, 2023, at 2:00 p.m. (ET)<br>Objection Deadline: October 19, 2023 at 4:00 p.m. (ET) |

**MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING
THE USE OF PROPERTY OF ESTATE OUTSIDE OF THE ORDINARY
COURSE OF BUSINESS, (II) AUTHORIZING THE RELEASE OF ANY
CAUSES OF ACTION AGAINST THE BUYER AND
THE LINCOLN PLACE PROPERTY, AND (III) GRANTING RELATED RELIEF**

ONH 1601 CS Investors LLC ("ONH 1601") and ONH AFC CS Investors LLC ("ONH AFC" and together with ONH 1601, the "Debtors") hereby submit this *Motion for Entry of an Order (I) Authorizing the Use of Property of Estate Outside of the Ordinary Course of Business, (II) Authorizing the Release of Any Causes of Action Against the Buyer and the Lincoln Place Property, and (III) Granting Related Relief* (the "Motion"). In support of this Motion, the Debtors rely on the *Declaration of Eric Lee in Support of Chapter 11 Petitions and First Day Motions* [D.I. 2], the *Declaration of Anna Phillips in Support of the Motion* [Attached as **Exhibit A**], the *Declaration of John Albert Sanders at Newmark Southern Region, LLC d/b/a Newmark in Support of the Motion* [Attached as **Exhibit B**], the *Declaration of Robert Rivani of Black Lion Investment Group and RKR GAIA 2, LLC in Support of the Motion* [Attached as **Exhibit C**], and the *Declaration of Gregory P. Eidson in Support of the Motion* [Attached as **Exhibit D**]. Additionally, the Debtors rely on the *Stipulation Regarding Motion for Entry of an Order (I) Authorizing the*

---

[1] The last four digits of the Debtors' federal tax identification numbers are 1199 (ONH AFC CS Investors LLC) and 6326 (ONH 1601 CS Investors LLC). The Debtors' mailing address is 3445 Peachtree Road, Suite 1225 Atlanta, GA 30326.

{1402.002-W0072807.}

*Use of Property of Estate Outside of the Ordinary Course of Business, (II) Authorizing the Release of Any Causes of Action Against the Buyer and the Lincoln Place Property, and (III) Granting Related Relief*, which is being filed simultaneously with this Motion. In further support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. The statutory predicates for the relief requested herein are pursuant to sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended or modified, the "Bankruptcy Code") and rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

3. On July 14, 2023 ("Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code and elected to proceed under subchapter V (the "Bankruptcy Cases"). These Bankruptcy Cases are jointly administered [D.I. 39].

4. The Debtors are authorized to continue to operate their businesses as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

5. On July 17, 2023, the Office of the United States Trustee for Region 3 appointed David M. Klauder, Esq. as the Subchapter V Trustee [D.I. 15].

6. Additional factual background regarding the Debtors, including the intended real estate investment projects and the events leading to the filing of the Bankruptcy Cases is set forth in more detail in the *Declaration of Eric Lee in Support of Chapter 11 Petitions and First Day Motions* [D.I. 2] (the "First Day Declaration"). Facts specific to this Motion are set forth below.

7. As explained in the First Day Declaration, ONH 1601 was formed to invest in Lincoln Place, a mixed-use building in Miami Beach, Florida at 1601 Washington Ave ("Lincoln Place"). Lincoln Place is owned in part, and managed, by a group of companies under the Nightingale Group, LLC ("Nightingale"). It was previously fully occupied for two decades, but its major tenant vacated in early 2022, which presented an opportunity for a renovation and new potential subtenants. The sole purpose of ONH 1601 was to recapitalize Lincoln Place.

8. Mr. Elchonon (also known as "Elie") Schwartz formed ONH 1601 under Nightingale. Mr. Schwartz, through ONH 1601 and affiliates, planned to provide a large renovation investment in Lincoln Place with equity raised from investors, equity contributed from Nightingale or related entities, and senior secured debt. Accordingly, accredited investors in ONH 1601 executed subscription agreements for the purpose of providing equity to fund the recapitalization and renovation of Lincoln Place. Based on the Debtors' investigations, which are ongoing, ONH 1601 raised approximately $8.83 million[2] from 167 investors for the Lincoln Place

---

[2] This is the total amount of the investment into ONH 1601 after certain redemptions were made.

project. Funds related to this project were to be held in a segregated account until the closing of the Lincoln Place project. The Lincoln Place project did not close pre-petition.

9. Since the appointment of the Chief Restructuring Officer Eric Lee ("CRO") and Independent Manager Anna Phillips ("Independent Manager"), the Debtors discovered that the large majority of the investors' funds intended for the Lincoln Place project were withdrawn from ONH 1601's bank account pre-petition. Upon learning that the funds raised had been withdrawn, the Independent Manager immediately began making inquiries as to the status of the funds and how to return the funds to the Debtors.

10. The Debtors have been tracing certain pre-petition transfers and believe that transfers have been made for the benefit of Lincoln Place. Additionally, the Debtors believe that they hold claims that would provide concern to any potential purchaser of Lincoln Place.

11. The Debtors, Mr. Schwartz, and Nightingale have been discussing resolutions to achieve the return of the investors' funds. The Debtors were aware that Mr. Schwartz and Nightingale were in the process of marketing Lincoln Place for sale. The Debtors have asked for due diligence in connection with that transaction including information about the marketing process, information about the potential purchasers' relationship with Mr. Schwartz and Nightingale, and the intended sources and uses of proceeds of the sale.

12. The parties have come to an agreement that, if the transaction closes as anticipated, will provide a substantial benefit to the Debtors in exchange for the release of claims against the Buyer (defined below) and the Lincoln Place property (but not against Mr. Schwartz, Nightingale, or any other party). The agreement is summarized below:

- RKR GAIA 2, LLC, an affiliate of Black Lion Investment Group (together with their successors and assigns, the "Buyer") has agreed to purchase Lincoln Place from the Nightingale Group. To Buyer's knowledge, based solely on its review of a draft of that certain *Stipulation Regarding Motion for Entry of an Order (I)*

*Authorizing the Use of Property of Estate Outside of the Ordinary Course of Business, (II) Authorizing the Release of Any Causes of Action Against the Buyer and the Lincoln Place Property, and (III) Granting Related Relief*, and based upon the purchase and sale agreement concerning Lincoln Place between Buyer and Seller, the Nightingale Group and Mr. Schwartz have agreed that Nightingale will deposit $8,830,000 (the "Proceeds") into an account held by ONH 1601 in exchange for the Debtors releasing any claims against the Buyer, its successors and assigns with respect to the property, and Lincoln Place. Mr. Schwartz and the Nightingale Group shall be excluded from any release.

- Mr. Schwartz or Nightingale will deposit any remaining proceeds after payment of (1) third party creditors of Lincoln Place (mainly its existing mortgage holders and lenders that are unrelated to Mr. Schwartz or Nightingale), and (2) any unaffiliated, third-party investors into Lincoln Place, in the amount of approximately $3 million pending final accounting and closing costs, into an escrow account mutually agreed upon with the Independent Manager, pending further negotiations or court order.

- The Buyer provides a declaration, which is attached to this Motion, that it has no connection to Mr. Schwartz or Nightingale and there is no other arrangement contemplated other than the sale of Lincoln Place for the amounts disclosed.

13. For the avoidance of doubt, the Debtors are not releasing any claims or causes of action against the Nightingale Group or Mr. Schwartz. Also, since there are requirements to closing such as government approvals, the actual closing (and payment) to the Debtors is not assured. To the extent that no closing occurs, no releases will be granted.

14. The Debtors have also provided an affidavit that the purchase price for Lincoln Place represents at least market value for the property. The Independent Manager believes, in the exercise of her business judgment, that such use of the Debtors' property provides the best resolution for the Debtors.

## **RELIEF REQUESTED**

15. By this Motion, the Debtors seek entry of an order (i) authorizing the use of property of the estate outside of the ordinary course of business, (ii) authorizing the release of any causes of action against the Buyer and the Lincoln Place property, and (iii) granting related relief.

**BASIS FOR RELIEF**

**I.     The Proposed Use of Property is Proper and Should Be Approved**

16.     The Debtors submit that ample authority exists for approval of the proposed releases under the Bankruptcy Code. Bankruptcy Code section 363(b)(1), which authorizes a debtor to use its assets other than in the ordinary course of business provides, in relevant part, that a debtor-in-possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

17.     Although Bankruptcy Code section 363 does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, bankruptcy courts routinely authorize sales of a debtor's assets if the sale is based upon the sound business judgment of the debtor. *See In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143 (3d Cir. 1986); *see also*, *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *In re Elpida Memory, Inc.*, 2012 Bankr. LEXIS 5367, *18 (Bankr. D. Del. Nov. 16, 2012) (explaining that the "section 363(b) standard is well-settled. A debtor may sell assets outside the ordinary course of business when it has demonstrated that the sale of such assets represents the sound exercise of business judgment").

18.     The "sound business judgment" test requires a debtor to establish four (4) elements in order to justify the sale, use, or lease of property outside the ordinary course of business, namely, (i) that a "sound business purpose" justifies the sale or use of assets outside the ordinary course of business; (ii) that accurate and reasonable notice has been provided to interested persons; (iii) that the debtor has obtained a fair and reasonable price (if applicable); and (iv) good faith. *See In re Abbotts Dairies*, 788 F.2d 143; *Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Sovereign Estates, Ltd.*, 104 B.R. 702,

704 (Bankr. E.D. Pa. 1989). A debtor's showing of a sound business purpose need not be unduly exhaustive, rather a debtor is "simply required to justify the proposed disposition with sound business reasons." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). Whether or not there are sufficient business reasons to justify a transaction depends upon the facts and circumstances of each case. *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Montgomery Ward*, 242 B.R. at 155 (approving funding of employee incentive programs and holding that the business purpose requirement was fulfilled, because the Debtors needed to implement these programs to stabilize the turnover rate, boost employee morale and retain key employees who would be essential to the Debtors' reorganization).

19. Additionally, Bankruptcy Code section 105(a) provides a bankruptcy court with broad powers in the administration of a case under the Bankruptcy Code. Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Provided that a bankruptcy court does not employ its equitable powers to achieve a result not contemplated by the Bankruptcy Code, the exercise of its section 105(a) power is proper. *In re Fesco Plastics Corp.*, 996 F.2d 152, 154 (7th Cir. 1993); *Pincus v. Graduate Loan Ctr. (In re Pincus)*, 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002). Pursuant to Bankruptcy Code section 105(a), a court may fashion any order or decree that helps preserve or protect the value of a debtor's assets. *See Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Cooper Props. Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that a bankruptcy court is "one of equity and as such it has a duty to protect whatever

equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

20. As explained in the First Day Declaration, an expeditious negotiated resolution is the path to achieve a return for investors. The sale of Lincoln Place to the Buyer will provide substantial funds to the bankruptcy estates in exchange for releases against the Buyer and the Lincoln Place property. Additionally, this agreement does not waive any claims against Nightingale or Mr. Schwartz. In the exercise of their reasonable business judgment, the Debtors determined that the most effective way to obtain a return for investors almost immediately was to agree to the releases in exchange for the proceeds of the sale. The Debtors will also serve a copy of this Motion on the identified investors of the Debtors to give interested parties an ability to review and object to the Motion.

21. The Debtors submit that the sale price for Lincoln Place is market value and is fair and reasonable. The releases and sale have also been negotiated at arms'-length and in good faith. There is no reason to believe the Buyer has any connection to the Debtors, Mr. Schwartz, or the Nightingale Group, and the Buyer has expressly disclaimed any connection.

22. The Debtors believe that the Proceeds and other consideration received in exchange for the release of claims is fair and equitable and the transaction in the best interests of the Debtors and their estates.[3] Additionally, the Proceeds will be held in escrow pending a further motion or chapter 11 plan. Use of the Proceeds of any kind shall not be determined until a further motion of the Debtors. Further use or disposition of the Proceeds will await further motion or until the Court confirms the Debtors' chapter 11 plan consistent with the requirements of the Bankruptcy Code.

---

[3] In the alternative, ONH 1601 believes that the Court may approve the relief requested herein pursuant to Bankruptcy Rule 9019. The transactions contemplated herein, given the facts and circumstances of these cases, clearly are well above the lowest range of reasonableness for such a settlement of claims. *See In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996).

*See e.g. Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 468-69 (2017) (explaining that distributions that circumvent procedural safeguards of the Bankruptcy Code are prohibited); *Pension Benefit Guaranty Corp. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.),* 700 F.2d 935, 940 (5th Cir. 1983) (prohibiting establishing terms of a plan *sub rosa* in connection with a sale of assets).

**II.    Relief from the Fourteen Day Waiting Periods Under Bankruptcy Rule 6004(h) and 6006(d) is Appropriate**

23.    The Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, the relief requested herein is essential to obtain a return for investors.

24.    Pursuant to Bankruptcy Rule 6004(h), unless the court orders otherwise, all orders authorizing the sale or use of property pursuant to Bankruptcy Code section 363 are automatically stayed for fourteen (14) days after entry of the order. *See* Fed. R. Bankr. P. 6004(h). The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to request a stay pending appeal before the order can be implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(g) (which has since been designated as subdivision (h)).

25.    It is critical that the Buyer obtains the releases so the parties may close the sale as soon as possible after all closing conditions have been achieved or waived. Accordingly, the Debtors request that the Court waive the 14-day stay period under Bankruptcy Rule 6004(h).

26.    Based upon the foregoing, the Debtors submit that the relief requested herein is necessary and appropriate, is in the best interests of their estates, and should be granted in all respects.

27. Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the U.S. Trustee for the District of Delaware; (b) the Subchapter V Trustee; (c) those parties identified on the Debtors' consolidated list of largest unsecured creditors; (d) the Internal Revenue Service; (e) the United States Attorney's Office for the District of Delaware; (f) the United States Department of Justice; (g) all parties who have requested notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002; and (h) all known pre-petition investors in the Debtors. In light of the nature of the relief requested in this Motion, the Debtors respectfully submit that no further notice is necessary.

28. No previous motion for the relief requested herein has been made to this or any other court.

**[REMAINDER OF SPACE INTENTIONALLY LEFT BLANK]**

WHEREFORE, the Debtors respectfully request that the Court enter an order approving the Motion and for such further relief as the Court deems just and proper.

| | |
|---|---|
| Dated: October 2, 2023<br>Wilmington, Delaware | **LANDIS RATH & COBB LLP**<br><br>/s/ *Matthew R. Pierce*<br>Adam G. Landis (No. 3407)<br>Matthew B. McGuire (No. 4366)<br>Matthew R. Pierce (No. 5946)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450<br>Email: landis@lrclaw.com<br>           mcguire@lrclaw.com<br>           pierce@lrclaw.com<br><br>-and-<br><br>**BAKER & HOSTETLER LLP**<br><br>Jorian L. Rose (admitted *pro hac vice*)<br>45 Rockefeller Plaza<br>New York, New York 10111<br>Telephone: (212) 589-4200<br>Facsimile: (212) 589-4201<br>Email: jrose@bakerlaw.com<br><br>Andrew V. Layden (admitted *pro hac vice*)<br>SunTrust Center, Suite 2300<br>200 South Orange Avenue<br>Orlando, FL 32801-3432<br>Telephone: (407) 649-4000<br>Facsimile: (407) 841-0168<br>Email: alayden@bakerlaw.com<br><br>*Counsel for the Debtors and Debtors in Possession* |