# **<u>EXHIBIT A</u>**

{1402.002-W0072944.}

## SETTLEMENT AND CONDITIONAL RELEASE AGREEMENT

This Settlement and Conditional Release Agreement (this "**Agreement**") is made and entered into as of October 2, 2023 (the "**Execution Date**") by and among (i) ONH 1601 CS Investors LLC and ONH AFC CS Investors LLC (collectively, the "**Debtors**"),[1] as debtors and debtors in possession in the Chapter 11 Cases (defined below), on behalf of themselves and their bankruptcy estates, and (ii) Elchonon ("Elie") Schwartz (also referred to herein as "Mr. Schwartz"), One Night Holdings LLC, Nightingale Properties, LLC, One Night Properties LLC, ES 28 Holdings LLC,[2] ES28 Investments LLC, Nightingale Property Group LLC, The Nightingale Group, LLC, Nightingale Realty, LLC, Nite Sky Management LLC, AAF 1601 Washington Ave TIC, ONH 2226 Third Ave LLC, Five Park 3003 LLC, 1 Westend PH-A LLC, 320 Mountain Road LLC, 1835 Market Investors LLC, 1635 Market Investors LLC, 1500 Spring Garden Investors LLC, NG 1601 Washington Ave LLC, Midnight Capital Partners LLC, ONH Promote LLC, ES 1 Westend Residence Trust, The Elchonon Schwartz Family Trust, ES28 Investments Trust, ES ONH Trust, Schwartz Family Charitable Trust, and ES Family Life Insurance Trust dated 06.22.2022 (the "**Schwartz Nightingale Parties**"). The Debtors and the Schwartz Nightingale Parties are referred to collectively hereinafter as the "**Parties**" and each individually as a "**Party**". To the extent **Garden Growth LLC** executes a joinder and assigns its claims, such party will also be treated as a Party for all purposes; provided that this Agreement shall be binding whether or not that joinder is signed.

## Recitals

**WHEREAS**, on July 14, 2023 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under subchapter V of chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (as amended, the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**Court**"), thereby commencing the chapter 11 cases that are being jointly administered for procedural purposes only *In re ONH AFC CS Investors LLC and ONH 1601 CS Investors LLC*, Case No. 23-10931 (CTG) (collectively, the "**Chapter 11 Cases**");

**WHEREAS**, on or about April 25, 2022, ONH AFC CS Investors LLC ("**ONH AFC**") was formed by the Schwartz Nightingale Parties to permit investment in certain real estate located in Atlanta, Georgia;

**WHEREAS**, on or about July 15, 2022, ONH 1601 CS Investors LLC ("**ONH 1601**") was formed by the Schwartz Nightingale Parties to permit investment in certain real estate located in Miami Beach, Florida;

**WHEREAS**, Ms. Anna Phillips was appointed as the independent manager (the "**Independent Manager**") for each of the Debtors on or about June 7, 2023;

---

[1] References in this Agreement to the Debtors shall mean either the Debtors or the Plan Trust (defined below), as applicable.
[2] ES 28 Holdings LLC be joined to the extent it is confirmed in existence and that Elchonon Schwartz has sign authority for this entity or any entity controlling this entity.

**WHEREAS**, on the Petition Date, the Debtors filed the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Post-Petition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Status, (III) Scheduling a Hearing, and (IV) Granting Related Relief* [D.I. 6] (the "**DIP Motion**") requesting approval of post-petition financing (the "**DIP Loan**"), and the Court granted the DIP Motion on a final basis on July 31, 2023, approving the DIP Loan [D.I. 59];

**WHEREAS**, since the appointment of the Independent Manager, the Debtors have investigated the pre-petition transactions involving the Schwartz Nightingale Parties, and the Debtors believe they have potential claims against the Schwartz Nightingale Parties arising from these transactions, whether under section 544 of the Bankruptcy Code or otherwise (collectively, the "**Potential Claims**");

**WHEREAS**, in connection with this Agreement, the Debtors will shortly file the *Motion for Entry of An Order (I) Authorizing the Use of Property of Estate Outside of the Ordinary Course of Business, (II) Authorizing the Release of Any Causes of Action Against the Buyer and the Lincoln Place Property, and (III) Granting Related Relief* (the "**Lincoln Place Motion**") and the Court's *Order Granting the Lincoln Place Motion*, the Schwartz Nightingale Parties will (i) pay ONH 1601 an amount equal to **$8.83 million** (the "**1601 Payment**"), and (ii) place approximately $3 million pending final accounting and closing costs into escrow pending negotiations regarding resolution of the Potential Claims;

**WHEREAS**, in connection with the Chapter 11 Cases, the Debtors will file a *Chapter 11 Plan of ONH AFC CS Investors LLC and ONH 1601 CS Investors LLC* (the "**Plan**") and will seek confirmation of the Plan through a confirmation hearing (the "**Confirmation Hearing**") and resulting confirmation order (the "**Confirmation Order**");

**WHEREAS**, in connection with the Plan, a liquidating trust (the "**Plan Trust**") will be created to liquidate the Debtors' assets including, without limitation, any claims or causes of action;

**WHEREAS**, the Parties and their respective advisors have negotiated extensively, at arm's length and in good faith, in an effort to settle and compromise the various disputed issues and Potential Claims addressed by this Agreement, and this Agreement is the product of those negotiations; and

**WHEREAS**, the Parties enter into this Agreement to: (i) avoid the delay, uncertainty, inconvenience and expense of litigation relating to the Potential Claims or any other causes of action that could be asserted against the Schwartz Nightingale Parties by or on behalf of the Debtors' estates; (ii) facilitate the prompt payment by the Schwartz Nightingale Parties to the Debtors; (iii) resolve amounts put into escrow with such funds to be turned over to the Debtors' estates on the terms and conditions set forth herein; and (iv) resolve and/or otherwise address certain other matters among the Debtors and the Schwartz Nightingale Parties.

**Agreement**

**NOW, THEREFORE**, in consideration of the mutual promises, covenants, considerations, waivers, and releases set forth herein, the receipt and sufficiency of which are hereby acknowledged by each Party, each Party hereby agrees as follows:

1. <u>Recitals</u>. The recitals set forth above are fully incorporated herein by reference and made an express part of this Agreement. The Parties stipulate and agree that each of the recitals and terms and conditions of this Agreement are an integral part of this Agreement.

2. <u>Court Approval and Contingent upon Opt-In</u>. This Agreement is subject in all respects to the Court's entry of an order (the "**Order**") approving this Agreement and authorizing the Debtors to perform hereunder, whether by separate motion or in connection with the Court's Confirmation Order. This Agreement is also contingent upon sufficient investors opting in so that the Plan is confirmed. Except as set forth in this Agreement, this Agreement will become effective when both (i) the Court has entered such Order and (ii) the Plan is confirmed (which date shall be, the "<u>Effective Date</u>").

3. <u>Settlement Payments</u>. In consideration of the various agreements contained in this Agreement including, without limitation, the conditional releases provided for in Section 7 hereof, the Schwartz Nightingale Parties shall pay to the Debtors an amount equal to an aggregate amount to be calculated on the date of the Confirmation Hearing that shall include (v) the amounts invested in the Debtors through CrowdStreet, Inc., (w) the amounts invested in the Debtors by Garden Growth LLC to the extent such party executes a joinder, (x) $1 million (which is an estimate of the initial amount of Plan Trust expenses (hereafter the "**Plan Trust Budget**")), plus (y) repayment of the unforgiven amount of the DIP Loan, and (z) any loans to or expenses of the Debtors or the Plan Trust approved by the Court (collectively, the "**Aggregate Repayment Amount**"), as follows:

   a. <u>Initial Payment.</u> On the earlier of the closing of the sale contemplated by the Lincoln Place Motion or December 31, 2023, the Schwartz Nightingale Parties shall pay the Debtors the total sum of at least $3,000,000 (which shall be held for the benefit of the Plan Trust pending approval of this Agreement (the "**Initial Payment**");

   b. <u>Quarterly Payments</u>. Following the Initial Payment, the Schwartz Nightingale Parties shall pay to the Plan Trust the Aggregate Repayment Amount in equal Quarterly Payments (defined below). The Quarterly Payments shall be due and calculated as follows: commencing three calendar months after the Initial Payment, and for three years after the Initial Payment (12 total calendar quarters), the Schwartz Nightingale Parties shall pay the Debtors a Quarterly Payment.[3] The Quarterly Payment shall be calculated by subtracting the Initial Payment and, if paid, the 1601 Payment

---

[3] Thus, for example, if the Initial Payment date was November 1, 2023, the next two Quarterly Payments would be due on February 1, 2024, and May 1, 2024.

- 3 -

        from the Aggregate Repayment Amount and dividing the sum by 12 (each a "**Quarterly Payment**").

    c. <u>Opt-in Investors</u>. The Debtors' proposed Plan allows each investor in the Debtors, other than the Schwartz Nightingale Parties, to elect to assign to the Plan Trust their potential claims and causes of action against the Schwartz Nightingale Parties. To the extent an investor elects to assign all of his or her potential claim(s) and causes of action against the Schwartz Nightingale Parties to the Plan Trust, each such investor shall receive an increased claim equal to 5% annual interest. Such interest will be paid after repayment of the Aggregate Repayment Amount to such investors and included in the final Quarterly Payment. To the extent Garden Growth LLC executes a joinder and assigns all potential claims and causes of action against the Schwartz Nightingale Parties to the Plan Trust, it shall also be treated as an opt-in investor.

    d. <u>Additional Quarterly Payment Calculation Terms</u>:

        i. To the extent that the Schwartz Nightingale Parties make any payment that exceeds the required Quarterly Payment, such additional payment shall reduce the next required Quarterly Payment by such excess.

        ii. If a Quarterly Payment is not made on the date it is due, the Schwartz Nightingale Parties shall have ten (10) business days after such date to make such payment, but the Aggregate Repayment Amount shall increase by an amount equal to 1% of the balance of the then unpaid Aggregate Repayment Amount.

        iii. To the extent (i) the Schwartz Nightingale Parties default under this Agreement or (ii) the Plan Trust expenses exceed the Plan Trust Budget by an amount not realized at that time from proceeds of collection efforts from third parties, the excess expenses shall be added to the Aggregate Repayment Amount and shall be included in the final Quarterly Payment.

4. <u>The Interests in, Sale of, and Marketing of the Schwartz Nightingale Parties' Assets</u>.

    a. The Schwartz Nightingale Parties shall commence marketing and sale of their assets and will use their best efforts to pursue, negotiate, market and/or sell all material assets. The Schwartz Nightingale Parties shall arrange for the marketing and liquidation of their assets with full consultation and information rights in favor of the Debtors. Upon request, the Schwartz Nightingale Parties shall provide the Debtors with access rights to any and all brokers, auctioneers, or any similar agents for the sale of any assets.

b. From and after the Effective Date, the Schwartz Nightingale Parties must make good faith efforts to give direction that all net[4] proceeds of the sales of the Schwartz Nightingale Parties' assets are to be paid directly to the Debtors. The Debtors, in turn, will pay the Schwartz Nightingale Parties 10% of the net proceeds within three (3) business days of receiving such proceeds. The net proceeds of such sales paid to the Debtors shall be paid into escrow to be applied to the Quarterly Payments as directed by the Schwartz Nightingale Parties or other payments to reduce the Aggregate Repayment Amount. To the extent that net proceeds of the sales are paid to the Schwartz Nightingale Parties directly, the Schwartz Nightingale Parties will pay 90% of the net proceeds of the sale to the Debtors and retain 10% of the net proceeds. The Schwartz Nightingale parties shall provide an accounting to the Debtors.

c. Except as where not permitted by law or, with respect to the Schwartz Nightingale Parties exclusive of Mr. Schwartz, ES28 Investments LLC, 1 Westend PH-A LLC, ES ONH Trust, ES 1 Westend Residence Trust, ES Family Life Insurance Trust, The Elchonon Schwartz Family Trust, ES28 Investments Trust, and any other trust he has created, where any pledge would create a default under separate third party agreements, the Schwartz Nightingale Parties shall agree to provide the Debtors with security interests, liens, pledges, assignments or other collateral interests (including by possession where specified) in all of their assets, including, without limitation, any assets owned directly or indirectly by any entity, person, or trust named in this Agreement. Such collateral interests will be released upon sale. Where the Schwartz Nightingale Parties cannot deliver a pledge or lien due to the foregoing exception, the Schwartz Nightingale Parties shall seek consent of such lenders if there is a restriction on such pledge or lien (except where not reasonably likely, for example, where there is on-going litigation with such lender) and work in good faith to otherwise commit or assign the proceeds of such assets to the Debtors or provide such other comparable protections as are permissible.

d. The Schwartz Nightingale Parties shall provide the Debtors with account control agreements related to, and online access to, their bank accounts and pledge any securities, including without limitation, the UBS investment accounts and any other brokerage accounts. The Schwartz Nightingale Parties shall not open or use any additional bank account or investment account without an account control agreement in favor of the Debtors covering such account. For the avoidance of doubt, if a bank account is opened by a new entity that is not a Schwartz Nightingale Party using money from third parties unrelated to this Agreement, such action is permitted by this Agreement and no pledge over the account is required.

---

[4] Net means after deducting the costs of such sale.

- 5 -

e. The Schwartz Nightingale Parties shall provide all required security and lien documentation requested by the Debtors fourteen (14) business days prior to the later of (1) the date scheduled for approval of this Agreement by the Court or (2) the Confirmation Hearing.

f. <u>Marketing and Sale of Assets.</u> The Schwartz Nightingale Parties shall commence marketing and sale of their assets as follows and shall provide a signed affidavit to the Debtors detailing the assets of material value.

   i. The Schwartz Nightingale Parties shall continue to pursue the marketing and sale of the real property located at 320 Mountain Rd., Englewood, NJ, 07631.

   ii. The Schwartz Nightingale Parties shall commence marketing and sale of all jewelry, watches, or art (as requested by the Debtors). Upon request after the Effective Date, the Schwartz Nightingale Parties shall provide physical control over all watches and jewelry to a third party custodian for purposes of creating a possessory lien in favor of and as requested by the Debtors. The Schwartz Nightingale Parties shall continue to market and sell such items and provide the Debtors with a quarterly update on progress and designate the Debtors as the beneficial owner on account of the granted lien for such property provided to any third party.

   iii. The Schwartz Nightingale Parties shall provide a lien on and seek payment for all acquisition fee receivables and any real estate deposits including, without limitation, in Five Park 3003 LLC.

   iv. If possible, the Schwartz Nightingale Parties shall cause the Debtors to be named insureds on all applicable insurance policies, provide a lien or junior lien (as applicable) on and seek payment for any insurance claims or investments held in relation to insurance policies in which the Schwartz Nightingale Parties have an interest or that benefit the Schwartz Nightingale Parties in any way, including the proceeds and claims related to any insurance policies or recoveries in which the Schwartz Nightingale Parties have an interest or that benefit the Schwartz Nightingale Parties in any way;

   v. The Schwartz Nightingale Parties shall provide a lien on and seek payment for any loan receivables due to them;

   vi. The Schwartz Nightingale Parties shall provide a lien on and seek payment for any interests in Nightingale Group, LLC, Nightingale Realty, LLC, Nite Sky Management LLC, and One Night Holdings LLC, and any other affiliate, including but not limited to proceeds from sale of real estate holdings, as well as ES28 Investments LLC or any investments, including MVI Systems LLC, Nighttime

        Holdings LLC, Dark Night Collectibles LLC, and any other investment in whatever form; and

vii. The Schwartz Nightingale Parties shall provide a lien on and seek payment for any investments held by the Schwartz Nightingale Parties in any IBEX accounts.

viii. <u>Provisions for 1 West End Marketing and Sale</u>.

1. The Schwartz Nightingale Parties agree to sell the apartment at 1 West End Avenue in New York, NY, 10023 ("**1 West End**"), as provided herein. The Schwartz Nightingale Parties will arrange for a broker (with the consent of the Debtors) and provide the Debtors unfettered access to that broker to market for sale or rental of 1 West End. The broker shall be unaffiliated with the Schwartz Nightingale Parties and shall be hired only after consultation with the Debtors.

2. Marketing of 1 West End will begin six (6) months ("**Marketing Period**") after the Court confirms the Plan and the Agreement is approved and signed. In the event of the sale of 1 West End, the Schwartz Nightingale Parties shall retain 10% of the proceeds payable to the Debtors from the sale to provide for alternate accommodations for the Schwartz family.

3. Prior to the Marketing Period, the Schwartz Nightingale Parties will work on a relocation plan for Mr. Schwartz including finding a new home and arranging for any financing needed, as well as arranging the logistics necessary for moving. At the commencement of the Marketing Period, all residents of 1 West End must vacate the property (unless otherwise directed by the Debtors).

4. Prior to the Marketing Period, Mr. Schwartz and his family are permitted to live in the apartment.

5. To the extent that the Schwartz Nightingale Parties can originate an alternative transaction that provides equivalent amount of proceeds to the Debtors and would not inhibit the Schwartz Nightingale Parties' ability to comply with the completion of payments under the Agreement, in the Debtors' reasonable judgment, then at their election, the Debtors can pursue this alternative transaction. Within thirty (30) days of the Execution Date, the parties shall meet and confer regarding the parameters of a transaction that would be deemed reasonably acceptable under this section.

5. <u>Confessions of Judgment</u>. The Schwartz Nightingale Parties shall sign separate confessions of judgment as directed in favor of the Debtors and Plan Trust (the "**Confessions of Judgment**") in the form of <u>Exhibit A</u> attached hereto. The Schwartz Nightingale Parties shall provide such executed Confessions of Judgment prior to the Confirmation Hearing. Such Confessions of Judgment will be held in escrow until the approval of this Agreement by the Court and full execution by the Debtors. The Confessions of Judgment shall then be held by the Debtors in the event of a failure to pay or other breach of the Agreement subject to the applicable cure period.

6. <u>Other Debtor/ Plan Trust Collections</u>. To the extent the Debtors or Plan Trust collect any amounts on account of claims arising under Bankruptcy Code section 544, the net proceeds of such actions shall be applied to the last Quarterly Payment, but only to the extent that such recoveries do not result in springing claims by a party against the Debtors or Plan Trust, and only to the extent such proceeds are not utilized as Plan Trust expenses in collecting on such action or for any other Plan Trust general administrative expenses.

7. <u>Conditional Releases</u>.

   a. <u>Releases by the Estate Parties</u>. If the Schwartz Nightingale Parties complete payments for the Aggregate Repayment Amount and any other amounts owing under this Agreement, the Debtors, for themselves and on behalf of their bankruptcy estates and any opt-in investors that assigned all of their potential claims to the Plan Trust pursuant to section 3(c) (collectively, the "**Estate Parties**") and any and all other entities who may purport to assert any claims or causes of action, directly or derivatively by, through, for, or because of the foregoing entities shall be deemed to have fully, finally, unconditionally, irrevocably and forever released, waived and discharged the Schwartz Nightingale Parties from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, which the Estate Parties now have or hereafter can, shall or may, have for, upon, or by reason of any matter, cause or thing whatsoever have as of the date of this release, including, without limitation, any and all claims that could have been brought in or with respect to the Potential Claims, except that the foregoing shall not: (i) release, waive, or discharge the right to enforce this Agreement and all documents ancillary thereto and (ii) release, waive, or discharge any direct third party claims owned by the investors not otherwise assigned to the Plan Trust.

   b. <u>Releases by the Schwartz Nightingale Parties</u>. If the Schwartz Nightingale Parties complete payments for the Aggregate Repayment Amount and any other amounts owing under this Agreement, the Schwartz Nightingale Parties and any and all other entities who may purport to assert any claims or causes of action, directly or derivatively by, through, for, or because of the foregoing entities shall be deemed to have fully, finally,

- 8 -

      unconditionally, irrevocably and forever released, waived and discharged the Estate Parties from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, which the Schwartz Nightingale Parties now have or hereafter can, shall or may, have for, upon, or by reason of any matter, cause or thing whatsoever have as of the date of this release, including, without limitation, any and all claims that could have been brought in or with respect to the Potential Claims, except that the foregoing shall not release, waive or discharge the right to enforce this Agreement and all documents ancillary thereto.

   c. If there is an event of default under this Agreement and that event of default is not cured by the later of the applicable cure timeframe set forth in this Agreement or five (5) business days, then the Debtors will not be bound by any of the waivers or releases provided in this Agreement. If there is an event of default under this Agreement, the Debtors may: (i) pursue any claims and causes of action including, without limitation, the Potential Claims; (ii) execute on the Confessions of Judgment; (iii) enforce any lien rights or security interests provided in this Agreement; and (iv) pursue all rights and remedies deemed by the Debtors as advisable and appropriate.

8. <u>Financial Disclosure</u>.

   a. Within thirty (30) days of execution of this Agreement, the Schwartz Nightingale Parties must execute a sworn affidavit under penalty of perjury that each Schwartz Nightingale Party has provided a complete and accurate representation of its or his financial condition to the best of its or his knowledge as stated therein in all material respects (the "**Initial Asset Disclosure Affidavit**"). The Initial Asset Disclosure Affidavit shall be substantially similar in form and substance, except in those instances where there has been a change in circumstances from the date of the execution hereof.

   b. By the Confirmation Hearing, the Schwartz Nightingale Parties must execute a sworn affidavit under penalty of perjury that to their knowledge there have been no material changes to the Initial Asset Disclosure Affidavit (the "**Confirmation Asset Disclosure Affidavit**"). The Confirmation Asset Disclosure Affidavit shall either state that (a) there have been no changes to the Initial Asset Disclosure Affidavit or (b) describe any changes from the Initial Asset Disclosure Affidavit.

   c. Within 30 days of the signing of this Agreement and until the Aggregate Repayment Amount is paid in full, the Schwartz Nightingale Parties must provide sale process updates to the Debtors in the form attached as <u>Exhibit B</u> each month for the first six (6) months following execution here of and

- 9 -

then quarterly thereafter. Such update shall be due ten (10) calendar days after each month end or when Quarterly Payment is made, as the case may be.

9. <u>Defaults and Remedies</u>. The following shall constitute a default or event of default under this Agreement, along with any events of default set forth elsewhere in this Agreement:

    a. The failure of any Schwartz Nightingale Party to meet any of the deadlines set forth in this Agreement;

    b. The failure of any Schwartz Nightingale Party to comply with the terms and conditions set forth in this Agreement;

    c. The determination by the Debtors or Plan Trust that any financial statements or disclosures of the Schwartz Nightingale Parties were fraudulent or purposefully materially misleading; or

    d. The knowing failure of any Schwartz Nightingale Party to disclose any material asset or transfer of assets.

10. <u>Non-Dischargeable Obligations</u>. This Agreement does not change the character or nature of the amounts owed to the Debtors for purposes of any future chapter 11 filing.

11. <u>Due Authorization; Binding Agreement; No Conflict</u>. Each of the Parties hereby represents and covenants to the other Parties as follows:

    a. such Party has the power, authority and the legal right to execute, deliver and perform under this Agreement;

    b. the person executing this Agreement on such Party's behalf has the full right and authority to enter into this Agreement on behalf of such Party and has the full right and authority to execute this Agreement and to fully bind such Party to the terms and conditions hereof;

    c. this Agreement has been duly executed and delivered by such Party and constitutes a legal, valid and binding obligation of such Party, enforceable in accordance with its terms; and

    d. such Party's execution and delivery of this Agreement, and its or his performance of its or his obligations hereunder, have been duly authorized and do not and will not: (i) violate any provision of any law, rule, regulation, order, judgment, injunction, decree or determination applicable to such Party or the organizational documents of such Party, or (ii) result in a breach of or constitute a default under any agreement or instrument to which such Party may be bound or affected;

*Provided, however*, that the Parties acknowledge and agree that the Debtors' foregoing representations and covenants are subject to entry of an Order approving this Agreement.

12. <u>Notice</u>. Any notice or other written instrument required or permitted to be given pursuant to this Agreement shall be in writing signed by the Party giving notice and shall be sent by hand delivery, certified mail, return receipt requested or overnight courier to the other Parties at the address(es) set forth below:

If to the Debtors:

<u>ONH AFC CS Investors LLC/ONH 1601 CS Investors LLC</u>
Jorian L. Rose
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone:    (212)589-4200
Facsimile:     (212)589-4201
Email: jrose@bakerlaw.com


If to the Schwartz/Nightingale Parties:

James P. Loonam, Esq.
Thomas M. Wearsch, Esq.
Jones Day LLP
250 Vesey Street
New York, NY 10281-1047
212.326.3939
twearsch@jonesday.com
jloonam@jonesday.com

      AND

Matthew C. Corcoran, Esq.
Jones Day LLP
325 John H. McConnell Boulevard, Suite 600
Columbus, OH 43215-2673
614.281.3822
mccorcoran@jonesday.com

      AND

Elchonon Schwartz
NPG
512 W 22nd St, 8th Floor
New York, NY 10011

Notice may be provided to counsel for the Parties by electronic mail. Notices may also be provided to such other address or addresses subsequently provided in writing by a Party to the other Parties.

13. <u>Construction</u>.  The Parties participated jointly in the drafting and preparation of this Agreement.  Therefore, in any interpretation or construction of this Agreement, the Agreement shall not be construed for or against any Party on that basis. No ambiguity shall be construed against any Party based upon a claim that such Party drafted the language.

14. <u>Amendment</u>.  This Agreement may not be modified, amended, or otherwise altered except in writing executed and delivered by each of the Parties.

15. <u>Successors and Assigns</u>.  This Agreement shall inure to the benefit of and be binding upon the Parties and their respective successors and assigns, including, without limitation, any chapter 11 or 7 trustee that may be appointed.  None of the provisions in this Agreement are intended by the Parties, nor shall they be deemed, to confer any benefit on any individual or entity not a Party to this Agreement or a successor or assignee of a Party to this Agreement.

16. <u>Attorneys' Fees and Costs</u>. Each of the Parties shall bear its own costs and expenses in connection with this matter, including, without limitation, legal fees and expenses.

17. <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement and understanding between the Parties with respect to the subject matter hereof and supersedes all prior or contemporaneous agreements, understandings, representations and statements, oral or written, between the Parties on the subject matter hereof, which agreements shall be of no further force or effect.  Each Party acknowledges that, in entering into this Agreement, such Party is not relying on any statements or representations made by the other Parties other than as expressly set forth herein.

18. <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same Agreement, binding on the Parties.  The Parties agree that facsimile or electronic copies of signatures shall be deemed original signatures for all purposes hereof.

19. <u>Headings</u>.  Headings in this Agreement are for convenience only and do not constitute a part of this Agreement.

20. <u>Governing Law.</u>  This Agreement shall be governed by, interpreted, construed, and enforced in accordance with the laws of the State of New York, without regard for that State's conflicts of law or choice of law principles.

21. <u>Jurisdiction</u>.  This Court (or, upon withdrawal of this Court's reference, the United States District Court for the District of Delaware) shall retain jurisdiction and venue over this Agreement and the Parties for the duration of the performance of the terms and provisions of this Agreement and for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or interpretation of this Agreement or to effectuate or enforce compliance with its terms.

**[SIGNATURE PAGES FOLLOW]**

IN WITNESS WHEREOF, each Party has executed this Agreement as of the Execution Date.

        ONH AFC CS Investors LLC

By: *Anna Phillips* (DocuSigned, F00E0ED6DCC644C...)
Name: Anna Phllips
Title: Manager

        ONH 1601 CS Investors LLC

By: *Anna Phillips* (DocuSigned, F00E0ED6DCC644C...)
Name: Anna Phillips
Title: Manager

Elchonon Schwartz individually and to the extent of his interests in or as managing member of AAF 1601 Washington Ave TIC; ONH 2226 Third Ave LLC; Five Park 3003 LLC; 1 Westend PH-A, LLC; 320 Mountain Road LLC; 1835 Market Investors LLC; 1635 Market Investors LLC; 1500 Spring Garden Investors LLC; NG 1601 Washington Ave LLC; Nite Sky Management LLC; ONH Promote LLC; One Night Holdings LLC; Nightingale Properties, LLC; One Night Properties LLC; ES 28 Holdings LLC[1]; ES28 Investments LLC; Nightingale Property Group LLC; The Nightingale Group, LLC; Nightingale Realty, LLC; Midnight Capital Partners LLC

By: _____
    Name: Elchonon Schwartz


ES 1 Westend Residence Trust; The Elchonon Schwartz Family Trust; ES28 Investments Trust; ES ONH Trust; Schwartz Family Charitable Trust; ES Family Life Insurance Trust dated 06.22.2022

By: _____
    Name: David Blaivas
    Title: Trustee

By: *Solomon Schwartz* (signed)
    Name: Solomon Schwartz
    Title: Trustee

---

[1] ES 28 Holdings LLC be joined to the extent it is confirmed in existence and that Elchonon Schwartz has sign authority for this entity or any entity controlling this entity.

# **JOINDER AGREEMENT**

The undersigned agrees to be bound for all purposes by the Settlement and Conditional Release Agreement, dated ___, 2023, by and among (i) ONH 1601 CS Investors LLC and ONH AFC CS Investors LLC, as debtors and debtors in possession in the Chapter 11 Cases (defined above), on behalf of themselves and their bankruptcy estates, and (ii) Elchonon ("Elie") Schwartz, One Night Holdings LLC, Nightingale Properties, LLC, One Night Properties LLC, ES 28 Holdings LLC,[1] ES28 Investments LLC, Nightingale Property Group LLC, The Nightingale Group, LLC, Nightingale Realty, LLC, Nite Sky Management LLC, AAF 1601 Washington Ave TIC, ONH 2226 Third Ave LLC, Five Park 3003 LLC, 1 Westend PH A, LLC, 320 Mountain Road LLC, 1835 Market Investors LLC, 1635 Market Investors LLC, 1500 Spring Garden Investors LLC, NG 1601 Washington Ave LLC, Midnight Capital Partners LLC, ONH Promote LLC, ES 1 Westend Residence Trust, The Elchonon Schwartz Family Trust, ES28 Investments Trust, ES ONH Trust, Schwartz Family Charitable Trust, and ES Family Life Insurance Trust dated 06.22.2022 (the "**Settlement Agreement**"), as a Party (as defined in the Settlement Agreement).

The undersigned agrees to assign to the Debtors any and all claims and causes of action whether known or unknown, matured or unmatured, arising out of any theory of law, that has arisen as of the date hereof relating the Debtors against the Schwartz Nightingale Parties (as defined in the Settlement Agreement).

        Garden Growth LLC

        By: _____
            Name:
            Title

---

[1] ES 28 Holdings LLC be joined to the extent it is confirmed in existence and that Elchonon Schwartz has sign authority for this entity or any entity controlling this entity.