## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 (Subchapter V) |
| ONH AFC CS Investors, LLC, *et al.*, | Case No. 23-10931 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Related Docket No. 422** |

## ORDER DENYING MOTION FOR CONTEMPT BUT REQUIRING <u>COMPLIANCE WITH CONFIRMATION ORDER</u>

The confirmed plan in this bankruptcy case was premised on a settlement.[1] The debtors' bankruptcy estates held causes of action against the Schwartz Nightingale Parties.[2] In short, it is alleged that the principal of the debtors, Elchonon Schwartz, raised funds for the debtors based on the representation that the debtors would use those funds to acquire commercial real estate projects, and then dissipated those funds. Under the settlement agreement, the Schwartz Nightingale Parties agreed to pay the debtors an amount (defined as the "Aggregate Repayment Amount") that, roughly speaking, would make the bankruptcy estate whole. The trust established by the plan succeeded to the debtors' rights and obligations under that settlement agreement.[3]

The settlement agreement required the Schwartz Nightingale Parties to make an initial payment of $3 million by December 31, 2023, and then pay the balance over

---

[1] The confirmed plan is docketed at D.I. 214-1.

[2] The "Schwartz Nightingale Parties" are defined in the settlement agreement found on page 62 of 77 of the confirmed plan, docketed at D.I. 214-1.

[3] That trust is the ONH Liquidating Trust. Anna Phillips serves as the liquidating trustee.

three years in 12 quarterly payments.  (The total amount was based on a formula that includes certain variables that have not yet been fixed, but viewing the amount as being in the range of $54 million may provide a useful way of understanding the general magnitude of the obligation.)

The contemplation was that the payments would come, at least in substantial part, from cash that Schwartz would generate through his real estate investments. But the agreement also contemplated that certain assets owned by the Schwartz Nightingale Parties would be sold, with the majority of the proceeds being applied towards paying down the settlement obligations.  The settlement agreement also included a provision, however, that would permit the Schwartz Nightingale Parties to retain ten percent of the net proceeds of those asset sales.

The Schwartz Nightingale Parties made the initial $3 million payment but thereafter breached their payment obligations.  This Court accordingly entered an (uncontested) order enforcing the settlement agreement and entering judgment against the Schwartz Nightingale Parties.[4]

One of the obligations of the Schwartz Nightingale Parties under the settlement agreement was to permit the marketing and sale of an apartment located at 1 Westend Avenue in New York, NY.  While Schwartz was permitted to occupy the apartment until six months after the confirmation order, he was thereafter required

---

[4] D.I. 271.

to vacate the apartment.  When he failed to do so, the liquidating trust brought a motion seeking an order that would clarify the obligation to vacate the apartment.[5]

After an evidentiary hearing, this Court granted the motion but made clear that the Schwartz Nightingale Parties retained their contractual right to ten percent of the sale proceeds.[6]  Specifically, this Court's order (which was entered on February 27, 2025) states that "the Schwartz Nightingale Parties are directed to … [v]acate 1 Westend within 30 days of entry of this order."[7]  The order added, however, that:

> As a condition to the Trust's ability to enforce this Order, the Trust is required to pay the Schwartz Nightingale Parties an amount equal to 10% of the net proceeds of the sale of any assets of the Schwartz Nightingale Parties within 30 days of entry of this Order, together with a good faith calculation of such amounts showing in reasonable detail how such amounts have been calculated; provided, however, should there be any dispute over the appropriate calculation of such amounts, such dispute shall be resolved by this Court.[8]

The Schwartz Nightingale Parties subsequently disputed whether the trust had in fact paid the ten percent of the net proceeds that it was required to pay under the settlement agreement and this Court's order, and accordingly refused to vacate the apartment.  The trust thereafter moved to have the Schwartz Nightingale Parties held in contempt.[9]  This Court held an evidentiary hearing on the motion on May 12, 2025.  This Court will deny the motion because, as further described below, the remedy of civil contempt must be limited to circumstances in which the violation of

---

[5] D.I. 378.

[6] D.I. 413.

[7] *Id.* ¶ 5(a).

[8] *Id.* ¶ 6.

[9] D.I. 422.

3

the Court's order is clear.  Based on the evidence the Court considered, however, the Court is satisfied that the trust has paid to the Schwartz Nightingale Parties all amounts that it owes.  The Court accordingly directs the Schwartz Nightingale Parties to vacate the apartment located at 1 Westend Avenue by 11:59 p.m. on May 21, 2025.  To the extent the Schwartz Nightingale Parties fail to vacate the apartment by that time, the Court anticipates that it would impose a contempt sanction of $10,000 for each day (or any portion thereof) on which any Schwartz Nightingale Party was thereafter occupying the apartment.

This Court of course has jurisdiction to enforce its prior orders.[10]  The remedy of civil contempt, however, "should not be resorted to where there is [a] fair ground of doubt as to the wrongfulness of the defendant's conduct."[11]

The Court noted at the outset of the May 12, 2025 hearing that it did not believe that a dispute over the amount owed to the Schwartz Nightingale Parties ought to justify their continued occupancy of the apartment they had been ordered to vacate.  Because, however, the February 27, 2025 order was amenable to such a construction, the Court indicated that it intended to set a date certain by which the Schwartz Nightingale Parties were required to vacate the apartment, and make clear that the remedy of contempt would be available if the apartment is not vacated by that date.

---

[10] *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009). *See also In re Continental Airlines, Inc.*, 236 B.R. 318, 325 (Bankr. D. Del. 1999).

[11] *Taggart v. Lorenzen*, 587 U.S. 554, 561 (2019) (internal quotations, brackets, and emphasis omitted).

The Court further indicated that it was prepared to resolve the dispute over any amount that the Schwartz Nightingale Parties contend is owed to them by the trust at any appropriate time. The Schwartz Nightingale Parties suggested that the Court go ahead and consider that evidence at the May 12, 2025 hearing. The trust, while it could have insisted that the Schwartz Nightingale Parties initiate an appropriate proceeding to recover any such amount, agreed that the issues and evidence were the very matters that the parties intended to put before the Court in connection with the motion for contempt, and agreed to proceed on that basis.

The Court thereafter heard the live testimony of both Schwartz and Joseph Pegnia, a managing director of GlassRatner Advisory & Capital Group, which serves as financial advisor to the trust. Both parties admitted various exhibits into evidence. Based on its consideration of the evidence presented, for the reasons set forth on the record at the May 12, 2025 hearing, and summarized below, the Court concludes that the trust does not owe further amounts to the Schwartz Nightingale Parties.

The Schwartz Nightingale Parties' argument was based on disputes regarding two different categories of transactions. *First*, they contended that they were entitled to ten percent of the net proceeds on sales of approximately $2.7 million of various watches, securities, and private equity investments. *Second*, they contend that they were entitled to ten percent of the proceeds obtained by the trust in connection with the sale of the Schwartz Nightingale Parties' interest in a Miami condominium unit. The evidence presented at the May 12, 2025 hearing does not support the Schwartz Nightingale Parties' position with respect to either contention.

As to the first argument, the Court assumes for these purposes that the approximately $2.7 million in question represents sale proceeds, which would have entitled the Schwartz Nightingale Parties to retain approximately $270,000 of the net sale proceeds. The Schwartz Nightingale Parties were required, however, to make a $3 million payment on the settlement agreement by December 31, 2023. And on January 12, 2024, Schwartz emailed Pegnia indicating that the full proceeds of those sales "meet the requirement for the first installment of my settlement."[12] Accordingly, even assuming that the Schwartz Nightingale Parties were entitled to keep ten percent of the proceeds (such that the trust could not *require* that the ten percent be applied towards the settlement obligations), the record before the Court shows that the Schwartz Nightingale parties *chose* to have those proceeds applied to pay down their settlement obligations. Having used those funds to pay down debt that they validly owed, the Schwartz Nightingale Parties have no right to have those funds returned to them. The Schwartz Nightingale Parties suggest that if the funds were returned to them, a separate contractual provision would have provided a means to true up the amounts owed as part of a final reconciliation. While it is true that the contract has such a mechanism, nothing about that changes the fact that the $270,000 was voluntarily paid by Schwartz to the trust in satisfaction of a valid debt.

The second argument relates to a condominium unit in Miami on which the Schwartz Nightingale Parties had made deposits of approximately $1.275 million towards a purchase price of $4.25 million. The trust reached an agreement with the

---

[12] Trust Ex. 15.

developer who was willing to pay $1.175 million of that amount to the trust (with $100,000 paid to the escrow agent) in connection with a termination of the purchase agreement. Schwartz, however, had allegedly paid $850,000 of the deposits in question out of the proceeds he had raised from investors. The trust had therefore asserted a claim against the condominium developer (presumably as a subsequent transferee of a fraudulent conveyance) to recover those amounts. And that developer was willing to release the $1.175 million to the trust only if it received a release of the claim to recover the $850,000. The agreement between the trust and the developer in fact provides for such a release.[13] The trust accordingly allocated $850,000 of those proceeds to the settlement of the trust's claim against the developer and paid the ten percent only on the balance of the sale proceeds.

The Schwartz Nightingale Parties suggest that a different sale was available to a buyer that Schwartz had located who would have paid a higher price and would not have involved granting a release in favor of the developer. Based on the availability of such a sale, and on their characterization of the transaction between the trust and the developer as a sale, they argue that the trust's allocation is inappropriate. But the alternative transaction brought with it various other forms of legal risk that the trust reasonably concluded it did not wish to take on. The Court concludes that because the transaction between the trust and the developer did involve a release of the trust's claims against the developer, some value must properly be ascribed to that release – which was a release of an estate cause of action and not

---

[13] Trust Ex. 10 ¶ 3(a).

a "sale" to which the Schwartz Nightingale parties are entitled to 10 percent of the net proceeds.  Based on the evidence presented, the Court concludes that the trust appropriately allocated the value of the sale proceeds.

For these reasons, the Court concludes that the trust does not owe further amounts to the Schwartz Nightingale Parties under the terms of the settlement agreement on account of the transactions in question.

For the foregoing reasons, as well as those set forth on the record during the May 12, 2025 hearing, it is therefore ORDERED that the trust's motion to hold the Schwartz Nightingale Parties in contempt is DENIED.  The Schwartz Nightingale Parties are ORDERED to vacate the apartment located at 1 Westend Avenue by 11:59 p.m. on May 21, 2025.  To the extent the Schwartz Nightingale Parties fail to vacate the apartment by that time, the Court anticipates that it would impose a contempt sanction of $10,000 for each day (or any portion thereof) on which any Schwartz Nightingale Party was thereafter occupying the apartment.

The terms of the settlement agreement and the Confirmation Order remain valid and in effect.  This Court reserves jurisdiction to adjudicate any further dispute that may arise between the parties with respect thereto.

Dated: May 14, 2025

_____
CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE